# EXHIBIT 1

PUBLIC LAW 115–54—AUG. 22, 2017          131 STAT. 1093

Public Law 115–54
115th Congress

## Joint Resolution

Granting the consent and approval of Congress for the Commonwealth of Virginia, the State of Maryland, and the District of Columbia to enter into a compact relating to the establishment of the Washington Metrorail Safety Commission.

Aug. 22, 2017
[H.J. Res. 76]

Whereas the Washington Metropolitan Area Transit Authority, an interstate compact agency of the District of Columbia, the Commonwealth of Virginia, and the State of Maryland, provides transportation services to millions of people each year, the safety of whom is paramount;

Whereas an effective and safe Washington Metropolitan Area Transit Authority system is essential to the commerce and prosperity of the National Capital region;

Whereas the Tri-State Oversight Committee, created by a memorandum of understanding amongst these 3 jurisdictions, has provided safety oversight of the Washington Metropolitan Area Transit Authority;

Whereas 49 U.S.C. 5329 requires the creation of a legally and financially independent state authority for safety oversight of all fixed rail transit facilities;

Whereas the District of Columbia, the Commonwealth of Virginia, and the State of Maryland intend to create a Washington Metrorail Safety Commission to act as the state safety oversight authority for the Washington Metropolitan Area Transit Authority system under 49 U.S.C. 5329; and

Whereas this compact is created for the benefit of the people of the District of Columbia, the Commonwealth of Virginia, and the State of Maryland and for the increase of their safety, commerce, and prosperity: Now, therefore, be it

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,*

### CONSENT AND APPROVAL OF CONGRESS

SECTION 1. The consent and approval of Congress is hereby given for the Commonwealth of Virginia, the State of Maryland, and the District of Columbia to enter into a compact for the safety oversight of the Washington Metropolitan Area Transit Authority Metrorail system (known as the Metrorail Safety Commission Interstate Compact), which has been negotiated by representatives of the State, the Commonwealth, and the District, substantially as follows:

131 STAT. 1094          PUBLIC LAW 115–54—AUG. 22, 2017

## "ARTICLE I

### "DEFINITIONS

"1. As used in this MSC Compact, the following words and terms shall have the meanings set forth below, unless the context clearly requires a different meaning. Capitalized terms used herein, but not otherwise defined in this MSC Compact, shall have the definition set forth in regulations issued under 49 U.S.C. § 5329, as they may be revised from time to time.

"(a) 'Alternate Member' means an alternate member of the Board;

"(b) 'Board' means the board of directors of the Commission;

"(c) 'Commission' means the Washington Metrorail Safety Commission;

"(d) 'Member' means a member of the Board;

"(e) 'MSC Compact' means this Washington Metrorail Safety Commission Interstate Compact;

"(f) 'Public Transportation Agency Safety Plan' means the comprehensive agency safety plan for a rail transit agency required by 49 U.S.C. § 5329 and the regulations issued thereunder, as may be amended or revised from time to time;

"(g) 'Public Transportation Safety Certification Training Program' means the federal certification training program, as established and amended from time to time by applicable federal laws and regulations, for federal and state employees, or other designated personnel, who conduct safety audits and examinations of public transportation systems, and employees of public transportation agencies directly responsible for safety oversight;

"(h) 'Safety Sensitive Position' means any position held by a WMATA employee or contractor designated in the Public Transportation Agency Safety Plan for the WMATA Rail System and approved by the Commission as directly or indirectly affecting the safety of the passengers or employees of the WMATA Rail System;

"(i) 'Signatory' means the State of Maryland, the Commonwealth of Virginia, and the District of Columbia;

"(j) 'State', 'state', or 'jurisdiction' means the District of Columbia, the State of Maryland, or the Commonwealth of Virginia;

"(k) 'Washington Metropolitan Area Transit Authority' or 'WMATA' is the entity created by the WMATA Compact, which entity is responsible for providing certain rail fixed guideway public transportation system services;

"(l) 'WMATA Compact' means the Washington Metropolitan Area Transit Authority Compact, approved November 6, 1966 (80 Stat. 1324; D.C. Official Code § 9–1107.01 et seq.); and

"(m) 'WMATA Rail System' or 'Metrorail' means the rail fixed guideway public transportation system and all other real and personal property owned, leased, operated, or otherwise used by WMATA rail services and shall include WMATA rail projects under design or construction by owners other than WMATA.

PUBLIC LAW 115–54—AUG. 22, 2017          131 STAT. 1095

"ARTICLE II

"PURPOSE AND FUNCTIONS

"2. The Signatories to the WMATA Compact hereby adopt this MSC Compact pursuant to 49 U.S.C. § 5329. The Commission created hereunder shall have safety regulatory and enforcement authority over the WMATA Rail System and shall act as the state safety oversight authority for WMATA under 49 U.S.C. § 5329, as may be amended from time to time. WMATA shall be subject to the Commission's rules, regulations, actions, and orders.

"3. The purpose of this MSC Compact is to create a state safety oversight authority for the WMATA Rail System, pursuant to the mandate of federal law, as a common agency of each Signatory, empowered in the manner hereinafter set forth to review, approve, oversee, and enforce the safety of the WMATA Rail System, including, without limitation, to:

"(a) Have exclusive safety oversight authority and responsibility over the WMATA Rail System pursuant to federal law, including, without limitation, the power to restrict, suspend, or prohibit rail service on all or part of the WMATA Rail System as set forth in this MSC Compact;

"(b) Develop and adopt a written state safety oversight program standard;

"(c) Review and approve the WMATA Public Transportation Agency Safety Plan;

"(d) Investigate hazards, incidents, and accidents on the WMATA Rail System;

"(e) Require, review, approve, oversee, and enforce Corrective Action Plans developed by WMATA; and

"(f) Meet other requirements of federal and State law relating to safety oversight of the WMATA Rail System.

"ARTICLE III

"ESTABLISHMENT AND ORGANIZATION

"A. Washington Metrorail Safety Commission

"4. The Commission is hereby created as an instrumentality of each Signatory, which shall be a public body corporate and politic, and which shall have the powers and duties set forth in this MSC Compact.

"5. The Commission shall be financially and legally independent from WMATA.

"B. Board Membership

"6. The Commission shall be governed by a Board of 6 Members with 2 Members appointed or reappointed (including to fill an unexpired term) by each Signatory pursuant to the Signatory's applicable laws.

"7. Each Signatory shall also appoint or reappoint (including to fill an unexpired term) one Alternate Member pursuant to the Signatory's applicable laws.

"8. An Alternate Member shall participate and take action as a Member only in the absence of one or both Members appointed from the same jurisdiction as the Alternate Member's appointing jurisdiction and, in such instances, may cast a single vote.

"9. Members and Alternate Members shall have backgrounds in transit safety, transportation, relevant engineering disciplines, or public finance.

"10. No Member or Alternate Member shall simultaneously hold an elected public office, serve on the WMATA board of directors, be employed by WMATA, or be a contractor to WMATA.

"11. Each Member and Alternate Member shall serve a 4-year term and may be reappointed for additional terms; except that, each Signatory shall make its initial appointments as follows:

"(a) One Member shall be appointed for a 4-year term;

"(b) One Member shall be appointed for a 2-year term; and

Appointment.

"(c) The Alternate Member shall be appointed for a 3-year term.

"12. Any person appointed to fill a vacancy shall serve for the unexpired term.

"13. Members and Alternate Members shall be entitled to reimbursement for reasonable and necessary expenses and shall be compensated for each day spent meeting on the business of the Commission at a rate of $200 per day or at such other rate as may be adjusted in appropriations approved by all of the Signatories.

"14. A Member or an Alternate Member may be removed or suspended from office only for cause in accordance with the laws of such Member's or Alternate Member's appointing jurisdiction.

"C. Quorum and Actions of the Board

"15. Four Members shall constitute a quorum, and the affirmative vote of 4 Members is required for action of the Board. Quorum and voting requirements under this paragraph may be met with one or more Alternate Members pursuant to section 8.

Effective date.

"16. The Commission action shall become effective upon enactment unless otherwise provided for by the Commission.

"D. Oath of Office

"17. Before entering office, each Member and Alternate Member shall take and subscribe to the following oath (or affirmation) of office or any such other oath or affirmation as the constitution or laws of the Signatory he or she represents shall provide:

"I, _____, hereby solemnly swear (or affirm) that I will support and defend the Constitution and the laws of the United States as a Member (or Alternate Member) of the Board of the Washington Metrorail Safety Commission and will faithfully discharge the duties of the office upon which I am about to enter.

"E. Organization and Procedure

"18. The Board shall provide for its own organization and procedure. Meetings of the Board shall be held as frequently as the Board determines, but in no event less than quarterly. The Board shall keep minutes of its meetings and establish rules and regulations governing its transactions and internal affairs, including, without limitation, policies regarding records retention that are not in conflict with applicable federal record retention laws.

"19. The Commission shall keep commercially reasonable records of its financial transactions in accordance with accounting principles generally accepted in the United States of America.

"20. The Commission shall establish an office for the conduct of its affairs at a location to be determined by the Commission.

PUBLIC LAW 115–54—AUG. 22, 2017          131 STAT. 1097

"21. The Commission shall adopt 5 U.S.C. § 552(a)–(d) and (g), and 5 U.S.C. § 552b, as both may be amended from time to time, as its freedom-of-information policy and open-meeting policy, respectively, and shall not be subject to the comparable laws or policies of any Signatory.

"22. Reports of investigations or inquiries adopted by the Board shall be made publicly available.

"23. The Commission shall adopt a policy on conflict of interest that shall be consistent with the regulations issued under 49 U.S.C. § 5329, as they may be revised from time to time, which, among other things, places appropriate separation between Members, officers, employees, contractors, and agents of the Commission and WMATA.

"24. The Commission shall adopt and utilize its own administrative procedure and procurement policies in conformance with applicable federal regulations and shall not be subject to the administrative procedure or procurement laws of any Signatory.

"F. Officers and Employees

"25. The Board shall elect a Chairman, Vice Chairman, Secretary, and Treasurer from among its Members, each for a 2-year term and shall prescribe their powers and duties.

"26. The Board shall appoint and fix the compensation and benefits of a chief executive officer who shall be the chief administrative officer of the Commission and who shall have expertise in transportation safety and one or more industry-recognized transportation safety certifications.

"27. Consistent with 49 U.S.C. § 5329, as may be amended from time to time, the Commission may employ, under the direction of the chief executive officer, such other technical, legal, clerical, and other employees on a regular, part-time, or as-needed basis as it determines necessary or desirable for the discharge of its duties.

"28. The Commission shall not be bound by any statute or regulation of any Signatory in the employment or discharge of any officer or employee of the Commission, but shall develop its own policies in compliance with federal law. The MSC shall, however, consider the laws of the Signatories in devising its employment and discharge policies, and when it deems it practical, devise policies consistent with the laws of the Signatories.

"29. The Board may fix and provide policies for the qualification, appointment, removal, term, tenure, compensation benefits, worker's compensation, pension, and retirement rights of its employees subject to federal law. The Board may also establish a personnel system based on merit and fitness and, subject to eligibility, participate in the pension, retirement, and worker's compensation plans of any Signatory or agency or political subdivision thereof.

"ARTICLE IV

"POWERS

"A. Safety Oversight Powers

"30. In carrying out its purposes, the Commission, through its Board or designated employees or agents, shall, consistent with federal law:

"(a) Adopt, revise, and distribute a written State Safety Oversight Program;

Review.

"(b) Review, approve, oversee, and enforce the adoption and implementation of WMATA's Public Transportation Agency Safety Plan;

Review.

"(c) Require, review, approve, oversee, and enforce the adoption and implementation of any Corrective Action Plans that the Commission deems appropriate;

"(d) Implement and enforce relevant federal and State laws and regulations relating to safety of the WMATA Rail System; and

Audit.
Time period.

"(e) Audit every 3 years the compliance of WMATA with WMATA's Public Transportation Agency Safety Plan or conduct such an audit on an ongoing basis over a 3-year time frame.

"31. In performing its duties, the Commission, through its Board or designated employees or agents, may:

"(a) Conduct, or cause to be conducted, inspections, investigations, examinations, and testing of WMATA personnel and contractors, property, equipment, facilities, rolling stock, and operations of the WMATA Rail System, including, without limitation, electronic information and databases through reasonable means, which may include issuance of subpoenas;

"(b) Enter upon the WMATA Rail System and, upon reasonable notice and a finding by the chief executive officer that a need exists, upon any lands, waters, and premises adjacent to the WMATA Rail System, including, without limitation, property owned or occupied by the federal government, for the purpose of making inspections, investigations, examinations, and testing as the Commission may deem necessary to carry out the purposes of this MSC Compact, and such entry shall not be deemed a trespass. The Commission shall make reasonable reimbursement for any actual damage resulting to any such adjacent lands, waters, and premises as a result of such activities;

"(c) Compel WMATA's compliance with any Corrective Action Plan or order of the Commission by such means as the Commission deems appropriate, including, without limitation, by:

"(1) Taking legal action in a court of competent jurisdiction;

"(2) Issuing citations or fines with funds going into an escrow account for spending by WMATA on Commission-directed safety measures;

"(3) Directing WMATA to prioritize spending on safety-critical items;

"(4) Removing a specific vehicle, infrastructure element, or hazard from the WMATA Rail System; and

"(5) Compelling WMATA to restrict, suspend, or prohibit rail service on all or part of the WMATA Rail System with an appropriate notice period dictated by the circumstances;

"(d) Direct WMATA to suspend or disqualify from performing in any Safety Sensitive Position an individual who is alleged to or has violated safety rules, regulations, policies, or laws;

"(e) Compel WMATA's Office of the Inspector General, created under WMATA Board Resolution 2006–18, or any successor WMATA office or organization having similar duties, to conduct safety-related audits or investigations and to provide its findings to the Commission; and

"(f) Take such other actions as the Commission may deem appropriate consistent with its purpose and powers.

PUBLIC LAW 115–54—AUG. 22, 2017          131 STAT. 1099

"32. Action by the Board under section 31(c)(5) shall require the unanimous vote of all Members present and voting. The Commission shall coordinate its enforcement activities with appropriate federal and State governmental authorities.

"B. General Powers

"33. In addition to the powers and duties set forth above, the Commission may:

"(a) Sue and be sued;

"(b) Adopt, amend, and repeal rules and regulations respecting the exercise of the powers conferred by this MSC Compact;

"(c) Create and abolish offices, employments, and positions (other than those specifically provided for in this MSC Compact) necessary or desirable for the purposes of the Commission;

"(d) Determine a staffing level for the Commission that is commensurate with the size and complexity of the WMATA Rail System, and require that employees and other designated personnel of the Commission, who are responsible for safety oversight, be qualified to perform such functions through appropriate training, including, without limitation, successful completion of the Public Transportation Safety Certification Training Program;

"(e) Contract for or employ consulting attorneys, inspectors, engineers, and such other experts necessary or desirable and, within the limitations prescribed in this MSC Compact, prescribe their powers and duties and fix their compensation;

"(f) Enter into and perform contracts, leases, and agreements necessary or desirable in the performance of its duties and in the execution of the powers granted under this MSC Compact;

"(g) Apply for, receive, and accept such payments, appropriations, grants, gifts, loans, advances, and other funds, properties, and services as may be transferred or made available to it by the United States government or any other public or private entity or individual, subject to the limitations specified in section 42;

"(h) Adopt an official seal and alter the same at its pleasure;

"(i) Adopt and amend by-laws, policies, and procedures governing the regulation of its affairs;

"(j) Appoint one or more advisory committees; and

"(k) Do such other acts necessary or desirable for the performance of its duties and the execution of its powers under this MSC Compact.

"34. Consistent with this MSC Compact, the Commission shall promulgate rules and regulations to carry out the purposes of this MSC Compact.

*Regulations.*

"ARTICLE V

"GENERAL PROVISIONS

"A. Annual Safety Report

"35. The Commission shall make and publish annually a status report on the safety of the WMATA Rail System, which shall include, among other requirements established by the Commission and federal law, status updates of outstanding Corrective Action Plans, Commission directives, and on-going investigations. A copy of each such report shall be provided to:

"(a) The Administrator of the Federal Transit Administration;

"(b) The Governor of Virginia, the Governor of Maryland, and the Mayor of the District of Columbia;

"(c) The Chairman of the Council of the District of Columbia;

"(d) The President of the Maryland Senate and the Speaker of the Maryland House of Delegates;

"(e) The President of the Virginia Senate and the Speaker of the Virginia House of Delegates; and

"(f) The General Manager and each member of the board of directors of WMATA.

"36. The Commission may prepare, publish, and distribute such other safety reports that it deems necessary or desirable.

"B. Annual Report of Operations

"37. The Commission shall make and publish an annual report on its programs, operations, and finances, which shall be distributed in the same manner provided by section 35.

"38. The Commission may also prepare, publish, and distribute such other public reports and informational materials as it deems necessary or desirable.

"C. Annual Independent Audit

"39. An independent annual audit shall be made of the financial accounts of the Commission. The audit shall be made by qualified certified public accountants selected by the Board, who shall have no personal interest, direct or indirect, in the financial affairs of the Commission or any of its officers or employees. The report of audit shall be prepared in accordance with generally accepted auditing principles and shall be distributed in the same manner provided by section 35. Members, employees, agents, and contractors of the Commission shall provide access to information necessary or desirable for the conduct of the annual audit.

"D. Financing

"40. The Commission's operations shall be funded, independently of WMATA, by the Signatory jurisdictions and, when available, by federal funds. The Commission shall have no authority to levy taxes.

"41. The Signatories shall unanimously agree on adequate funding levels for the Commission and make equal contributions of such funding, subject to annual appropriation, to cover the portion of Commission operations not funded by federal funds.

Loans.

"42. The Commission may borrow up to 5% of its last annual appropriations budget in anticipation of receipts, or as otherwise set forth in the appropriations budget approved by all of the Signatories, from any lawful lending institution for any purpose of this MSC Compact, including, without limitation, for administrative expenses. Such loans shall be for a term not to exceed 2 years, or at such longer term approved by each Signatory pursuant to its laws as evidenced by the written authorization by the Mayor of the District of Columbia and the Governors of Maryland and Virginia, and at such rates of interest as shall be acceptable to the Commission.

Time period.

"43. With respect to the District of Columbia, the commitment or obligation to render financial assistance to the Commission shall be created, by appropriation or in such other manner, or by such other legislation, as the District of Columbia shall determine; provided, that any such commitment or obligation shall be approved by Congress pursuant to the District of Columbia Home Rule Act,

PUBLIC LAW 115–54—AUG. 22, 2017        131 STAT. 1101

approved December 24, 1973 (87 Stat. 774; D.C. Official Code § 1–201.01 et seq.).

"44. Pursuant to the requirements of 31 U.S.C. §§ 1341, 1342, 1349 to 1351, and 1511 to 1519, and D.C. Official Code §§ 47–105 and 47–355.01 to 355.08 (collectively, the 'Anti-Deficiency Acts'), the District cannot obligate itself to any financial commitment in any present or future year unless the necessary funds to pay that commitment have been appropriated and are lawfully available for the purpose committed. Thus, pursuant to the Anti-Deficiency Acts, nothing in the MSC Compact creates an obligation of the District in anticipation of an appropriation for such purpose, and the District's legal liability for the payment of any amount under this MSC Compact does not and may not arise or obtain in advance of the lawful availability of appropriated funds for the applicable fiscal year.

"E. Tax Exemption

"45. The exercise of the powers granted by this MSC Compact shall in all respects be for the benefit of the people of the District of Columbia, the Commonwealth of Virginia, and the State of Maryland and for the increase of their safety, commerce, and prosperity, and as the activities associated with this MSC Compact shall constitute the performance of essential governmental functions, the Commission shall not be required to pay any taxes or assessments upon the services or any property acquired or used by the Commission under the provisions of this MSC Compact or upon the income therefrom, and shall at all times be free from taxation within the District of Columbia, the Commonwealth of Virginia, and the State of Maryland.

"F. Reconsideration of Commission Orders

"46. WMATA shall have the right to petition the Commission for reconsideration of an order based on rules and procedures developed by the Commission.

"47. Consistent with section 16, the filing of a petition for reconsideration shall not act as a stay upon the execution of a Commission order, or any part of it, unless the Commission orders otherwise. WMATA may appeal any adverse action on a petition for reconsideration as set forth in section 48.

"G. Judicial Matters

"48. The United States District Court for the Eastern District of Virginia, Alexandria Division, the United States District Court for the District of Maryland, Southern Division, and the United States District Court for the District of Columbia shall have exclusive and original jurisdiction of all actions brought by or against the Commission and to enforce subpoenas under this MSC Compact.

"49. The commencement of a judicial proceeding shall not operate as a stay of a Commission order unless specifically ordered by the court.

"H. Liability and Indemnification

"50. The Commission and its Members, Alternate Members, officers, agents, employees, or representatives shall not be liable for suit or action or for any judgment or decree for damages, loss, or injury resulting from action taken within the scope of their employment or duties under this MSC Compact, nor required in any case arising or any appeal taken under this MSC Compact to give a supersedeas bond or security for damages. Nothing in this paragraph shall be construed to protect such person from

131 STAT. 1102        PUBLIC LAW 115–54—AUG. 22, 2017

suit or liability for damage, loss, injury, or liability caused by the intentional or willful and wanton misconduct of such person.

Contracts.

"51. The Commission shall be liable for its contracts and for its torts and those of its Members, Alternate Members, officers, agents, employees, and representatives committed in the conduct of any proprietary function, in accordance with the law of the applicable Signatory (including, without limitation, rules on conflict of laws) but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for such breach of contract or tort for which the Commission shall be liable, as herein provided, shall be by suit against the Commission. Nothing contained in this MSC Compact shall be construed as a waiver by the District of Columbia, the Commonwealth of Virginia, or the State of Maryland of any immunity from suit.

"I. Commitment of Parties

"52. Each of the Signatories pledges to each other faithful cooperation in providing safety oversight for the WMATA Rail System, and, to affect such purposes, agrees to consider in good faith and request any necessary legislation to achieve the objectives of this MSC Compact.

"J. Amendments and Supplements

"53. Amendments and supplements to this MSC Compact shall be adopted by legislative action of each of the Signatories and the consent of Congress. When one Signatory adopts an amendment or supplement to an existing section of this MSC Compact, that amendment or supplement shall not be immediately effective, and the previously enacted provision or provisions shall remain in effect in each jurisdiction until the amendment or supplement is approved by the other Signatories and is consented to by Congress.

"K. Withdrawal and Termination

"54. Any Signatory may withdraw from this MSC Compact, which action shall constitute a termination of this MSC Compact.

Time period.
Notice.

"55. Withdrawal from this MSC Compact shall be by a Signatory's repeal of this MSC Compact from its laws, but such repeal shall not take effect until 2 years after the effective date of the repealed statute and written notice of the withdrawal being given by the withdrawing Signatory to the governors or mayor, as appropriate, of the other Signatories.

Plans.

"56. Prior to termination of this MSC Compact, the Commission shall provide each Signatory:

"(a) A mechanism for concluding the operations of the Commission;

Proposal.

"(b) A proposal to maintain state safety oversight of the WMATA Rail System in compliance with applicable federal law;

"(c) A plan to hold surplus funds in a trust for a successor regulatory entity for 4 years after the termination of this MSC Compact; and

"(d) A plan to return any surplus funds that remain 4 years after the creation of the trust.

"L. Construction and Severability

"57. This MSC Compact shall be liberally construed to effectuate the purposes for which it is created.

"58. If any part or provision of this MSC Compact or the application thereof to any person or circumstances be adjudged invalid by any court of competent jurisdiction, such judgment shall be confined in its operation to the part, provision, or application

PUBLIC LAW 115–54—AUG. 22, 2017     131 STAT. 1103

directly involved in the controversy in which such judgment shall
have been rendered and shall not affect or impair the validity
of the remainder of this MSC Compact or the application thereof
to other persons or circumstances, and the Signatories hereby
declare that they would have entered into this MSC Compact or
the remainder thereof had the invalidity of such provision or
application thereof been apparent.

"M. Adoption; Effective Date

"59. This MSC Compact shall be adopted by the Signatories
in the manner provided by law therefor and shall be signed and
sealed in 4 duplicate original copies. One such copy shall be filed
with the Secretary of State of the State of Maryland, the Secretary
of the Commonwealth of Virginia, and the Secretary of the District
of Columbia in accordance with the laws of each jurisdiction. One
copy shall be filed and retained in the archives of the Commission
upon its organization. This MSC Compact shall become effective
upon the enactment of concurring legislation by the District of
Columbia, the Commonwealth of Virginia, and the State of Mary-
land, and consent thereto by Congress and when all other acts
or actions have been taken, including, without limitation, the
signing and execution of this MSC Compact by the Governors
of Maryland and Virginia and the Mayor of the District of Columbia.

"N. Conflict of Laws

"60. Any conflict between any authority granted herein, or
the exercise of such authority, and the provisions of the WMATA
Compact shall be resolved in favor of the exercise of such authority
by the Commission.

"61. All other general or special laws inconsistent with this
MSC Compact are hereby declared to be inapplicable to the Commis-
sion or its activities.".

RIGHT TO ALTER, AMEND, OR REPEAL

SEC. 2. The right to alter, amend, or repeal this joint resolution
is expressly reserved. The consent granted by this joint resolution
shall not be construed as impairing or in any manner affecting
any right or jurisdiction of the United States in and over the
region that forms the subject of the Compact.

CONSTRUCTION AND SEVERABILITY

SEC. 3. It is intended that the provisions of this Compact
shall be reasonably and liberally construed to effectuate the pur-
poses thereof. If any part or application of this Compact, or legisla-
tion enabling the Compact, is held invalid, the remainder of the
Compact or its application to other situations or persons shall
not be affected.

INCONSISTENCY OF LANGUAGE

SEC. 4. The validity of this Compact shall not be affected
by any insubstantial differences in its form or language as adopted
by the State of Maryland, the Commonwealth of Virginia, and
the District of Columbia.

131 STAT. 1104          PUBLIC LAW 115–54—AUG. 22, 2017

EFFECTIVE DATE

SEC. 5. This joint resolution shall take effect on the date of enactment of this joint resolution.

Approved August 22, 2017.

LEGISLATIVE HISTORY—H.J. Res. 76 (S.J. Res. 22):
HOUSE REPORTS: No. 115–227 (Comm. on the Judiciary).
CONGRESSIONAL RECORD, Vol. 163 (2017):
    July 17, considered and passed House.
    Aug. 4, considered and passed Senate pursuant to a unanimous-consent agreement on Aug. 3.