# EXHIBIT 9

**May 6, 2024**



<u>**VIA EMAIL AND OVERNIGHT MAIL**</u>

David L. Mayer, Ph.D.
CEO, Washington Metrorail Safety Commission
(dmayer@wmsc.gov)

Katherine Silbaugh
General Counsel, Washington Metrorail Safety Commission
(KSilbaugh@wmsc.gov)
750 First St., NE, Suite 900
Washington, D.C. 20002

RE:   **Objections to Subpoena SDT-2024-0001, dated April 8, 2024 (the "Subpoena")**

Dear Dr. Mayer and Ms. Silbaugh:

     The Washington Metropolitan Area Transit Authority ("WMATA") respectfully responds to the referenced Subpoena from the Washington Metrorail Safety Commission ("WMSC"). As explained more fully below, WMATA objects to the Subpoena, consisting of 18 requests for production of documents (the "Subpoena Requests"). As a courtesy, WMATA accepted service of the Subpoena as of April 11, 2024, after the WMSC informed WMATA that it was unable to serve a WMATA representative. WMATA and the WMSC agreed that WMATA's objections would be due on May 6, 2024, and any documents not objected to by WMATA would be produced by May 31, 2024.

<u>**INTRODUCTION**</u>

*Relevant Background*

     The WMSC's issuance of the Subpoena is inconsistent with the parties' past practice of informally resolving disputes, including disputes related to audits or other requests for documents or information. The WMSC Program Standard requires informal attempts to resolve disagreements between WMATA and WMSC. WMSC Program Standard Rev. 6, Section 11: Dispute Resolution and Enforcement. On February 9, 2024, after receiving the WMSC's initial request for documents (the "Initial Audit Requests") in connection with the WMSC's Audit of Fitness for Duty and Occupational Health Programs (the "Audit") at issue here, WMATA sought clarification from the WMSC on the scope of the Initial Audit Requests, many of which the WMSC had never raised in prior audits. Among other things, WMATA attempted to work with the WMSC to establish a more reasonable approach to providing information and to avoid, for example, hundreds of personnel hours converting paper copies to electronic form when more efficient means are available.

**Washington
Metropolitan Area
Transit Authority**

300 7th Street, SW
Washington, DC 20024
202.962.1234

wmata.com

*A District of Columbia,
Maryland and Virginia
Transit Partnership*

May 6, 2024
Page 2

WMATA is <u>not</u> seeking to prevent access to relevant information within the WMSC's rail safety oversight role. Since the certification of the WMSC by the Federal Transit Administration ("FTA") in 2019, WMATA has responded to over 90 audit requests for documents from the WMSC across approximately 21 audits (not including the current Audit) and WMATA has produced approximately 37,900 documents consisting of over 500,000 pages and over 115 Gigabytes of data uploaded to the WMSC. In our view, had the parties continued its discussions regarding the scope of the Audit, many of WMATA's concerns with the current Subpoena Requests could have been addressed.

Instead, WMATA seeks clarity on which agency has oversight and enforcement authority on applicable regulations. For example, if both the Federal Occupational Safety and Health Administration ("OSHA") and the WMSC conduct separate and independent audits of WMATA's occupational health programs and each agency issues conflicting directives or orders, with which agency's directives or orders is WMATA required to comply? Similarly, if both the FTA and the WMSC conduct separate and independent audits of WMATA's drug and alcohol program and each agency issues conflicting directives or orders, with which agency's directive or order is WMATA required to comply? It is unfair to require WMATA to reconcile conflicting directives or orders and to subject WMATA to the undue burden and undue expense of duplicative audits. WMATA respectfully requests that the WMSC coordinate with OSHA and the FTA on audits to come to a common position on which is the lead agency. Without determining the lead agency, WMATA could not fully comply with conflicting directives or orders. Such coordination would also avoid unnecessary use of WMATA resources.

WMATA welcomes the opportunity to engage in mediation to resolve these issues. To preserve its rights, however, WMATA submits these objections to the Subpoena.

***The Subpoena***

As noted, on February 9, 2024, the WMSC issued the Initial Audit Requests on WMATA. On March 11, 2024, WMATA provided the WMSC with documents responsive to certain items in the Initial Audit Requests. The Subpoena Requests are for documents not already provided to the WMSC on March 11. The Subpoena Requests are for documents relating to WMATA's (1) occupational health programs and (2) drug and alcohol program.

With respect to WMATA's occupational health programs, WMATA objects to these requests because the WMSC's authority is limited to Metrorail safety. The WMSC does not have the statutory authority to audit federal or state occupational safety and health rules and regulations, as described in more detail below. In addition, WMATA's workplace safety programs are comprehensively monitored and audited by federal, state, and local occupational safety and health administrations. Thus, the Subpoena seeks to impose a duplicative and undue burden on WMATA that could lead to conflicting directives or orders between agencies with competent jurisdiction and the WMSC. To alleviate these concerns, WMATA informed the WMSC that it would not object to the WMSC's coordination and participation in such oversight activities pertaining to the

May 6, 2024
Page 3

Metrorail system, alongside federal and state agencies with competent jurisdiction. The WMSC declined WMATA's offer, and instead issued the Subpoena on April 8, 2024.

With respect to WMATA's drug and alcohol program, the FTA regularly audits WMATA's drug and alcohol program and, therefore, as with the occupational safety and health portions of the Audit, a cumulative audit by the WMSC would be wasteful, cause undue hardship, and may result in conflicting directives or orders. WMATA has offered and continues to offer that the WMSC accompany the FTA during its next audit of WMATA's drug and alcohol program. The WMSC declined this offer as well.

Accordingly, WMATA objects to the scope of the WMSC's Subpoena.

## PRIVILEGE AND CONFIDENTIALITY OBJECTIONS

WMATA objects generally to the Subpoena Requests insofar as they seek privileged attorney-client communications, attorney work product material, deliberative process communications, or self-evaluative material (collectively, "Privileged Information"). Any inadvertent production of Privileged Information shall not be deemed a waiver of the applicable privilege or this objection. WMATA reserves the right to obtain return of that information, prohibit its use in any manner, and/or demand the destruction of any such information inadvertently produced, if any, in response to these Subpoena Requests.

WMATA also objects generally to the Subpoena Requests insofar as they call for the production of records containing confidential information, including, but not limited to, personal identifiable information ("PII"),[1] personnel information unrelated to the WMSC's audit or authority, or information related to programs beyond Metrorail (i.e., the limit of the WMSC's oversight authority). If the WMSC requires records containing confidential information, to the extent such records are not otherwise subject to the objections stated herein, WMATA again offers the WMSC the opportunity to inspect such records at WMATA's office, as WMATA's other federal regulators do. This reasonable process would avoid the inadvertent disclosure of such information as well as the inordinate resources to scan, redact, and electronically transmit such information.

## GENERAL OBJECTIONS

The following general objections are incorporated by reference into WMATA's response to each and every Subpoena Request below:

1.    The specific responses set forth below are for the purposes of responding to the Subpoena only, and WMATA neither waives nor intends to waive, but expressly reserves, any and all

---

[1]    In a previous audit, the WMSC objected to WMATA redacting sensitive PII, critical infrastructure information ("CII"), or sensitive security information ("SSI"), before transmitting records. WMATA complied with the WMSC's request in that audit, but remains concerned about risking inadvertent disclosure of such information.

May 6, 2024
Page 4

objections it may have to the relevance, competence, materiality, admission, admissibility, or use in any proceeding of any information, documents or writings produced, identified, or referred to herein, or to the introduction of any evidence at any proceeding relating to the subjects covered by such.

2.    WMATA expressly reserves its rights to amend or to supplement its objections and responses with additional responsive information, if any, that emerges through WMATA's investigation or otherwise. WMATA further expressly reserves the right to rely, at any time including in a proceeding, upon subsequently discovered documents or information omitted from the specific responses set forth below as a result of oversight or inadvertence.

3.    The specific objections set forth below are based upon WMATA's interpretation of the language used in the Subpoena Requests, and WMATA reserves the right to amend or to supplement its objections and responses in the event the WMSC asserts an interpretation that differs from WMATA's interpretation.

4.    WMATA objects generally to the Subpoena Requests without limitation to the extent that they purport to impose upon WMATA a duty or an obligation that is greater than or different from the requirements under the WMSC's applicable authority or applicable law.

   a.    Several of the Subpoena Requests pertain to occupational workplace safety, which exceeds the scope of the WMSC's regulatory authority over Metrorail safety. *See, e.g.,* Subpoena Requests 2, 3, 11, 12, 21, 22, 23, 24, 25, 26, 27, 28. As federal statute and the WMSC's authorizing interstate Compact make clear, the WMSC only holds authority to regulate Metrorail safety, not to advance the general health and welfare of WMATA employees, much less employees having nothing to do with Metrorail. The WMSC Compact is ***silent*** on workplace safety matters, let alone the WMSC's authority to enforce relevant occupational safety and health standards against WMATA. Instead, the WMSC Compact only empowers the WMSC to "enforce the safety of the WMATA Rail System," including "[i]nvestigating hazards, incidents, and accidents on the WMATA Rail System." WMSC Compact, Art. II § 3(d); *see also* 49 C.F.R. § 674.7 (defining "hazards," "incidents," and "accidents" as various rail-related events). The WMSC may, for example, "[r]emov[e] a specific vehicle, infrastructure element, or hazard from the WMATA Rail System" and may "[c]ompel[] WMATA to restrict, suspend, or prohibit rail service on all or part of the WMATA Rail System with an appropriate notice period dictated by the circumstances." *Id.*, Art. IV § 31(c). And the WMSC may "[d]irect WMATA to suspend or disqualify from performing in any Safety Sensitive Position an individual who is alleged to or has violated safety rules, regulations, policies, or laws." Art IV § 31(d). Each of these powers reflects a purpose of protecting ***rail safety***. And, as noted, the WMSC Compact says nothing about occupational health and safety. That the WMSC has no regulatory authority over occupational health and safety is reinforced given that Congress has expressly granted such authority to a particular federal agency. Congress enacted the Occupational Safety and Health Act of 1970 "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." § 2(b), 84 Stat. 1590, 29 U.S.C. § 651(b). The Act "authorizes the Secretary of Labor to establish … mandatory nationwide standards governing health and safety

May 6, 2024
Page 5

          in the workplace."[2]    When Congress has expressly delegated authority to a particular agency, OSHA, to regulate a particular subject matter, a different agency lacks the power to regulate that subject matter.[3]  Congress was no doubt well aware of its delegations to the Secretary of Labor when it approved the WMSC Compact in 2017.  *See* Pub. L. No. 115–54.  Many of the WMSC's Subpoena Requests pertaining to occupational workplace safety exceed the scope of its regulatory authority.[4]  Therefore, those Subpoena Requests are not appropriate.

    b.    Several of the Subpoena Requests ask for information about testing related to drug use and alcohol misuse that overlaps and exceeds information WMATA provides to the FTA during regular on-site audits.  *See. e.g.*. Subpoena Requests 9, 13, 14, 15, 16, 18.  As the Subpoena Requests acknowledge, drug use and alcohol misuse is regulated by the FTA.  *See* Subpoena Request No. 18.  FTA regulations "require[]" employers to "maintain[]" and disclose certain "information pertaining to the employer's anti-drug and alcohol misuse programs."  49 C.F.R. § 655.73(d); *see also id.* § 655.71(a) ("An employer shall maintain records of its anti-drug and alcohol misuse program as provided in this section.").  In light of the FTA regulations' detailed specification of what drug and alcohol information must be maintained, to whom it must be disclosed, and when it must be disclosed, the WMSC Compact limits the WMSC's authority to demand additional and

---

[2]    *Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 493, (1981) (citing 29 U.S.C. §§ 655(a), (b)).  Department of Labor ("DOL") regulations therefore govern workplace-safety issues such as permissible levels of asbestos exposure in the workplace, *Metro-N. Commuter R. Co. v. Buckley*, 521 U.S. 424 (1997), occupational exposure to benzene, *Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 611 (1980), and occupational exposure to bloodborne pathogens, *Am. Dental Ass'n v. Martin*, 984 F.2d 823, 824 (7th Cir. 1993); *compare, e.g.*, Subpoena Requests No. 8, 25, 26 (related to "noise and dosimetry test schedules," "bloodborne pathogens," and "medical monitoring results for welders").

[3]    *See Bayou Lawn & Landscape Servs. v. Sec'y of Labor*, 713 F.3d 1080, 1084 (11th Cir. 2013) ("we would be hard-pressed to locate [the] power [to regulate particular subject matter] in one agency where it had been specifically and expressly delegated by Congress to a different agency"); *Union Pac. R.R. Co. v. Surface Transportation Bd.*, 863 F.3d 816, 823 (8th Cir. 2017) ("Congress's express delegation to the FRA and Amtrak in § 207(a) overcomes any implied situational authority claimed by the Board under § 213(a).").

[4]    *See, e.g., United States v. Newport News Shipbuilding & Dry Dock Co.*, 837 F.2d 162, 168 (4th Cir. 1988) ("Because the materials sought by [the agency] are not within the scope of its statutory authority, we affirm the order of the district court denying enforcement of the subpoena in this case."); *FEC v. Machinists Non-Partisan Pol. League*, 655 F.2d 380, 396 (D.C. Cir. 1981) ("Since the FEC lacked jurisdiction to control 'draft' group contributions, the subpoena should not have been enforced.").

May 6, 2024
Page 6

duplicative information on the same topic outside this framework.[5]  As a compromise, and subject to and without waiver of its objections, WMATA offered not to object to the WMSC's participation in the FTA's drug and alcohol program audits, as they relate to Metrorail, or to make available for inspection at WMATA's offices the same records the FTA requires WMATA to maintain and relies on for its audits.  In addition, the WMSC's Subpoena Requests about testing related to drug use and alcohol misuse are unduly burdensome.[6] The applicable federal regulations define the information that the WMSC, as the relevant state safety oversight agency, needs to fulfill its safety oversight role, but they do not require WMATA to needlessly expend resources.  WMATA should not be required to divert limited resources to respond to duplicative audits.

5.    WMATA further objects generally to the extent that the Subpoena Requests are beyond the WMSC's authority and expertise.  Responding to the Subpoena will impose further undue burdens on WMATA to address scientific and technical matters beyond the qualifications and jurisdiction of the WMSC.  This could, as stated previously, result in conflicting directives or orders from the WMSC and the relevant oversight agencies with the expertise to monitor WMATA's applicable programs.  As stated in General Objection 4, WMATA is subject to oversight by several federal and state agencies that have specialized expertise to monitor WMATA's applicable programs, including but not limited to occupational health, drug and alcohol, and environmental compliance programs.  WMATA has experienced these very issues as shown in the examples below:

    a.  OSHA inspectors (and their state counterparts) with certifications—such as Certified Industrial Hygienist, Graduate Safety Professionals, Ergonomists, Occupational Safety Specialist Certification and Safety and Health Master Certification—and knowledge specific to OSHA programs are uniquely qualified to interpret the complex regulatory requirements applicable to workplace safety programs and perform complex scientific analyses of those programs.  WMSC regulations do not require WMSC staff to undergo training in these areas.  *See* 49 C.F.R. part 672 (describing minimum training for State Safety Oversight Audit ("SSOA") staff which does not include OSHA workplace safety programs); *see also* Subpoena Request 23 (requesting WMATA to produce a "[l]ist of all . . . occupational health reporting requirements required by the federal government, the District of Columbia, Maryland, and Virginia.").

    b.  This is also highlighted by Subpoena Request 25, wherein the WMSC is seeking medical monitoring results for welders and other employees who engage in hot

---

[5]    *Cf. Union Pac. R.R. Co.*, 863 F.3d at 826 ("Congress likely did not give [two agencies] separate authority to develop two potentially conflicting [sets of] rules."); Antonin Scalia & Bryan A. Garner, Reading Law 107 (2012) ("The expression of one thing implies the exclusion of others.").

[6]    *See Reich v. Nat'l Eng'g & Contracting Co.*, 13 F.3d 93, 98 (4th Cir. 1993) (holding administrative subpoena is enforceable only to the extent it is "not unduly burdensome").

May 6, 2024
Page 7

work from January 1, 2021, through December 31, 2023. The applicable OSHA regulation, 29 CFR part 1910 subpart Q (1910.251-255), does not include requirements to establish a medical monitoring program specific to employees performing welding, cutting, or brazing ("hot work").

c. Another example is Subpoena Request 27, wherein the WMSC is seeking air or surface monitoring protocols for various substances such silica, asbestos, hexavalent chromium, lead, or any other toxic or hazardous substances. But neither the applicable OSHA programs—specifically, 29 C.F.R. part 1910 subpart Z, Toxic and Hazardous Substances (which includes hundreds of such substances in Table Z 1 alone)—nor any other OSHA standard, contain any surface contamination criteria or qualifications for skin absorption. When the WMSC discovered dust in cabinets, WMATA took the initiative to test the dust first following industry best practices, discovered that it contained lead, and retained a third-party contractor to abate the lead and clean the cabinets. WMATA reported this issue to—and is actively working on an investigation and response with—Maryland Occupational Safety and Health (MOSH) and Virginia Occupational Safety and Health (VOSH). *See* 29 C.F.R. § 1910.1025. WMATA notified the WMSC of its progress with MOSH and VOSH as a courtesy and has communicated transparently with the WMSC since September 2023. Yet throughout these exchanges, the WMSC has sought information, analyses, and actions that are outside the requirements of OSHA's regulations and contrary to best practices, despite an absence of confirmed employee airborne concentration exposure at or above the OSHA action level.

d. Another example is Corrective Action Plan WMSC-24-C0255. Here, the WMSC has issued a request for an environmental remediation issue that, if WMATA were to comply with the WMSC's request, would potentially <u>create</u> an environmental hazard where none exists. Specifically, WMSC auditors noted that WMATA had placed a warning notice on cracked floor tiles so as not to disturb the tiles due to asbestos. Pursuant to Environmental Protection Agency ("EPA") guidance (see EPA letter dated July 13, 1990), the cracked tiles and mastic are considered "non-friable" (*i.e.*, not an asbestos exposure risk) if left undisturbed, and WMATA personnel are not performing any activities prohibited under the OSHA program for asbestos safety. *See* 29 C.F.R. § 1910.1001. The WMSC, however, directed WMATA to implement a program to remove the tiles on an accelerated basis rather than in accordance with WMATA's asbestos program (part of WMATA's holistic set of health and safety initiatives includes assessments in advance of any work which may disturb such materials). Removing the tiles on the WMSC's schedule would risk creating a workplace safety and health hazard through the release of asbestos particles that cause the very harm the EPA seeks to avoid.[7]

---

[7]     As noted, on March 8, 2024, WMATA attempted to informally resolve WMATA's objections to the scope of the Initial Audit Requests. Since then, the WMSC issued the Subpoena, seeking certain records and information pertaining to the referenced Audit. To the extent the WMSC attempts to obtain this Audit information—or other information pertaining to WMATA's

May 6, 2024
Page 8

     e. Lastly, and more fundamentally, the WMSC and its auditors have refused WMATA's requests to use auditing best practices, as used by auditors from WMATA's other oversight agencies such as the FTA, OSHA, and the Government Accountability Office ("GAO"). The WMSC has refused to provide an audit checklist, to coordinate audit activities with WMATA, and to ensure the participation of all relevant WMATA departments and stakeholders.

6.     WMATA objects generally to the Subpoena Requests to the extent that they call for information not within WMATA's possession, including Subpoena Requests to create new records or to modify existing records to comply.

### SPECIFIC OBJECTIONS

Subject to WMATA's general objections above, which are incorporated by reference into each specific objection asserted herein, with respect to the Subpoena Requests propounded by the WMSC, WMATA specifically objects as follows:

**Request 2**. All policies and procedures (Metrorail-wide, departmental, organizational unit level and all documents from policy instructions down to work instructions) related to:  b. Occupational health programs.

    **Specific Objections:** WMATA objects to this Subpoena Request because "related to: b. Occupational health programs" is vague, overly broad, and beyond the scope of the WMSC's limited, rail safety oversight authority. To the extent that "Occupational health programs" refers to the same programs listed in Request 3 below, per informal discussions between WMATA and the WMSC that were not memorialized in the Subpoena, WMATA objects that this Subpoena Request is duplicative. For the reasons stated in WMATA's objections to Subpoena Request 3, the Subpoena Request relates to specific programs listed directly in OSHA's regulations at 29 C.F.R. part 1910. These programs are beyond the authority of the WMSC and instead within the purview of OSHA and/or state and local jurisdictional equivalents. A duplicative audit by the WMSC is wasteful, could result in conflicting findings, directives, or orders given OSHA's expertise in this area, and is unnecessary. Even if a duplicative audit is within the WMSC's authority, WMATA has stated that it would not object to the WMSC's participation in OSHA audits pertaining to the Metrorail system, and thus the WMSC can obtain the same information without unduly burdening WMATA resources.

    **Response:** Without waiver of and subject to WMATA's objections, WMATA states that the WMSC's Initial Audit Requests included "related to: a. Fitness for duty programs." On March 11, 2024, WMATA produced documents in response to that portion of the Initial Audit Request. Even though the Subpoena does not request production of policies and procedures for WMATA's drug and alcohol program, in the spirit of cooperation, WMATA will, as a courtesy, produce such policies and procedures.

----

workplace safety programs—indirectly from WMATA staff, WMATA's objections apply equally to those attempts.

May 6, 2024
Page 9

**Request 3.**  [If not provided in response to #2] Provide current program documents including any governing documents and procedures (Metrorail-wide, departmental, organizational unit level and all documents from policy instructions down to work instructions) for the following programs:

a.  Walking-Working Surfaces.  This should include documents covering Ladder Safety, stairways, platforms, manlifts, scaffolding, protection from falling objects, and other fall protection requirements.

b.  Environmental Control.  This should include documents covering ventilation, noise exposure (e.g. hearing conservation), and nonionizing radiation.

c.  Hazardous Materials.  This should include documents covering compressed gases, petroleum gases, hazardous chemicals, and hazardous waste.

d.  Personal Protective Equipment.  This should include documents covering eye and face protection, respiratory protection, head protection, foot protection, electrical protective equipment, and hand protection.

e.  General Environmental Controls.  This should include documents covering safety color codes for marking physical hazards, specifications for accident prevention signs and tags, permit-required confined spaces, and control of hazardous energy.

f.  Medical and First Aid.  This should include documents covering medical services and first aid.

g.  Materials Handling and Storage.  This should include documents covering powered industrial trucks, overhead and gantry cranes, crawler locomotive and truck cranes, and slings.

h.  Machinery and Machine Guarding.  This should include documents covering woodworking or metal machinery, abrasive wheel machinery, forging machines, and mechanical power-transmission apparatuses, including mechanical and hydraulic power presses.

i.  Hand and Portable Powered Tools / Hand-Held Equipment Guarding. This should include documents covering the guarding of portable powered tools, portable tools, and equipment.

j.  Welding, Cutting and Brazing.  This should include documents covering any type of welding (Oxygen-fuel, Arc, or Resistance).

k.  Electrical Safety.  This should include documents covering wiring design protection, specific purpose equipment and installations, hazardous (classified) locations, third rail safety on the right-of-way, and safety-related work practices.

l.  Toxic and Hazardous Substances.  This should include documents covering air contaminants, Asbestos, Coal tar pitch volatiles, Carcinogens (4-Nitrobiphenyl, etc.), alpha-Naphthylamine, Methyl chloromethyl ether, Dichlorobenzidine (and its salts), bis- Chloromethyl ether, beta-Naphthylamine, Benzidine, 4-Aminodiphenyl, Ethyleneimine, beta-Propiolactone, Acetylaminofluorene, 4-Dimethylaminoazobenzene, Nitrosodimethylamine, Vinyl chloride, Inorganic arsenic, Beryllium, Lead,

Chromium (VI) / Hexavalent Chromium, Cadmium, Benzene, Bloodborne pathogens, Cotton dust, 1,2- dibromo-3-chloropropane, Acrylonitrile, Ethylene oxide, Formaldehyde, Methylenedianiline, 1,3-Butadiene, Methylene chloride, Respirable crystalline silica, Ionizing radiation, hazard communication, retention of Department of Transportation (DOT) markings, placards and labels.

**Specific Objections:**  WMATA objects to this Subpoena Request because it is overly broad and pertains to programs beyond the scope of the WMSC's limited, rail safety oversight authority.  WMATA further objects to the extent that any such documents include information not subject to the WMSC's authority, including information that pertains to all WMATA personnel across the entire organization, far beyond the WMSC's limited Metrorail jurisdiction.  As noted in WMATA's objections to Subpoena Request 2, this Subpoena Request is also vague as each sub-part of the Subpoena Request appears listed directly in OSHA's regulations at 29 C.F.R. part 1910, without identifying any WMATA program or how any such programs would relate to the WMSC's authority.  Lastly, WMATA objects to the WMSC's duplicative efforts to review programs already under extensive oversight from competent and cognizant agencies.  The WMSC has not identified any authority that provides the WMSC with the right to review WMATA's compliance with another agency's regulations pertaining to general occupational safety and health.  WMATA's occupational health programs are administered in accordance with applicable Federal and state occupational health standards, and depending on the context and jurisdiction where work is performed, may be subject to oversight by the Federal OSHA and/or supporting state occupational health and safety regulators, such as MOSH and VOSH.  These agencies are the enforcers of applicable occupational safety and health standards within their respective jurisdictions, with the expertise and experience to audit compliance with their own regulations.

**Response:**  Without waiver of and subject to WMATA's objections, WMATA states that it is unaware of a basis for the WMSC to request this information, but WMATA is willing to review and discuss any authority the WMSC wishes to supply, if any exists.

**Request 9**.  All completed drug and alcohol information requests transmitted to job applicants' prior DOT employers for the period of September 1, 2023, through December 31, 2023.

**Specific Objections:**  WMATA objects that this Subpoena Request is duplicative of WMATA's obligations to, and oversight from, the FTA under 49 C.F.R. § 655, Prevention of Alcohol Misuse and Prohibited Drug Use in Transit Operations, and is beyond the scope of the WMSC's limited, rail safety oversight authority.  As the WMSC is aware, the records in this Subpoena Request are an FTA requirement and subject to regular FTA onsite audit, which covers all WMATA personnel—across all operating modes—hired for safety sensitive transit positions.  WMATA further objects to this Subpoena Request because it is unduly burdensome to require WMATA to comb through personnel records to isolate this information, redact for PII and non-responsive information covering non-Metrorail personnel, scan the relevant portions, and produce them electronically in a manner in which WMATA does not maintain them in the normal course of business.  WMATA further objects to the

Subpoena Request as vague as to the phrase "information requests transmitted to job applicants." Moreover, WMATA objects that the Subpoena Request is overly broad in seeking "All . . . information requests" regardless of whether the applicant was hired by WMATA or for what position, including for positions beyond the scope of the WMSC's limited, Metrorail authority, such as bus operators.

**Response:** Without waiver of and subject to WMATA's objections, WMATA will make available for in-person inspection, at its office and at a mutually convenient time, the records relevant to this Subpoena Request. WMATA also has no objection if the WMSC wishes to participate in those aspects of the FTA's drug and alcohol audit covering the Metrorail system, rather than duplicating effort and burdening WMATA resources.

**Request 11**. All training requirements related to fitness for duty and occupational health programs.

**Specific Objections:** WMATA objects to this Subpoena Request as vague, as to "All training requirements related to" and "occupational health programs." To the extent that "occupational health programs" refers to the same OSHA programs listed in Subpoena Request 3 above, per informal discussions between WMATA and the WMSC that the WMSC did not memorialize in the Subpoena, WMATA objects to the extent that this Subpoena Request is duplicative and beyond the scope of the WMSC's limited, rail safety oversight authority, and expressly incorporates by reference here its objections to Subpoena Requests 2 and 3. WMATA further objects to the Subpoena Request as unduly burdensome, particularly in that the information requested is just as readily available to the WMSC as to WMATA. WMATA is subject to various regulations containing training requirements, for which the WMSC has equal access, including the FTA's and OSHA's publicly available regulations. Lastly, WMATA objects to the Subpoena Request for "All training requirements related to fitness for duty" as WMATA has already produced all such responsive documents in response to the WMSC's Initial Audit Requests.

**Response:** Without waiver of and subject to WMATA's objections, WMATA notes that not all of OSHA's part 1910 programs include training requirements, and respectfully refers the WMSC to that part for additional guidance.

**Request 12**. All training curricula, trainings, class schedules, and exams related to fitness for duty and occupational health programs.

**Specific Objections:** WMATA objects to this Subpoena Request as vague and ambiguous; it is unclear what it meant by "occupational health programs." To the extent that "occupational health programs" refers to the same OSHA programs listed in Subpoena Request 3 above, per informal discussions between WMATA and the WMSC that the WMSC did not memorialize in the Subpoena, WMATA objects to the extent that this Subpoena Request is duplicative and beyond the scope of the WMSC's limited, rail safety oversight authority, and expressly incorporates by reference here its objections to Subpoena Requests 2 and 3. WMATA further objects that this Subpoena Request is overly broad and seeks information unrelated to Metrorail.

**Response:** Without waiver of and subject to WMATA's objections, WMATA will produce documents related to reasonable suspicion training, which are part of WMATA's fitness

May 6, 2024
Page 12

for duty program. WMATA notes that only some of the OSHA part 1910 programs that are potentially implicated by this Subpoena Request have any exam requirements. WMATA respectfully refers the WMSC to part 1910 for further guidance.

**Request 13**. All completed forms for all random drug/alcohol tests conducted from October 1, 2023, through December 31, 2023.

**Specific Objections:** WMATA expressly incorporates by reference here its objections to Subpoena Request 9. WMATA further objects that this Subpoena Request is duplicative of WMATA's obligations to, and oversight from, the FTA under 49 C.F.R. § 655, Prevention of Alcohol Misuse and Prohibited Drug Use in Transit Operations. WMATA also objects that this Subpoena Request is overly broad and beyond the scope of the WMSC's limited, rail safety oversight authority. The records in response to this Subpoena Request are subject to regular FTA onsite audit, in part because such forms exist only in a hardcopy quadruplicate format for all WMATA Safety Sensitive personnel (regardless of operating mode, which personnel may change during their employment), not only for Metrorail personnel. The FTA audits all such forms across all operating modes (*i.e.*, not only for Metrorail), and WMATA does not keep the records segregated for Metrorail in the regular course of business. WMATA also objects to this Subpoena Request because it is unduly burdensome to require WMATA to search for and produce this information: to do so, it would have to comb through all hardcopy personnel records to isolate this information (for the time period in the Subpoena Request, to cross reference other databases to isolate whether the employee worked for Metrorail at the time of the test, and for only the random drug/alcohol test type per the Subpoena Request) physically separate six to ten attached forms to scan the relevant portions, review and redact for PII and non-relevant information (*e.g.*, Metrobus, MTPD) as needed, manually scan each carbon copy form due to its fragility and FTA chain of custody requirements, and produce the results electronically in a manner that WMATA does not maintain in the normal course of business. It would also pose an undue burden to staff *following* the production to the WMSC: after production, WMATA would have to re-insert and re-attach the fragile carbon copy forms into the duplicate FTA-preferred format to replace them in each individual personnel file for future FTA audit. During the 2021 WMSC Fitness for Duty audit and over WMATA's objection, WMATA was forced to spend over 1,200 hours on a similar request. WMATA estimates it would take over 500 hours to fulfill the current Subpoena Request as demanded. WMATA further objects that the request is overly broad in seeking "All completed forms" regardless of whether the individual works for WMATA in a position beyond the scope of the WMSC's limited, rail safety oversight authority, such as bus operators.

**Response:** Without waiver of and subject to WMATA's objections, WMATA will make available for in-person inspection, at its office and at a mutually convenient time, the records relevant to this Subpoena Request. WMATA also has no objection if the WMSC wishes to participate in those aspects of the FTA's drug and alcohol audit covering the Metrorail system, rather than duplicating effort and burdening WMATA resources.

May 6, 2024
Page 13

**Request 14**.  Log or tracker for follow-up drug/alcohol tests scheduled to be completed from September 1, 2023, through December 31, 2023.

**Specific Objections:**  WMATA expressly incorporates by reference here its specific objections to Subpoena Requests 9 and 13.  WMATA also objects that this Subpoena Request is duplicative of WMATA's obligations to, and oversight from, the FTA under 49 C.F.R. § 655, Prevention of Alcohol Misuse and Prohibited Drug Use in Transit Operations, and that this Subpoena Request is overly broad and beyond the scope of the WMSC's limited, rail safety oversight authority.  Any such logs or trackers for follow-up drug/alcohol tests are maintained in the format and for the time periods required by the FTA.  The FTA audits all such logs or trackers, which include all personnel as WMATA does not keep the records segregated for Metrorail specific Safety Sensitive personnel.  WMATA also objects to this Subpoena Request because it is unduly burdensome to require WMATA to comb through such records to isolate the information sought by this Subpoena Request, review and redact for PII and non-responsive information (*e.g.*, Metrobus, MTPD) as needed, and scan and produce the results in a manner in which WMATA does not maintain them in the normal course of business.  Such a task would take more than 40 hours.  The WMSC could easily and much more efficiently rely on or participate in the FTA's audit activity with regard to the Metrorail aspects of this program, or at a minimum inspect such logs or trackers at WMATA's offices.
**Response:**  Without waiver of and subject to WMATA's objections, WMATA will make available for in-person inspection, at its office and at a mutually convenient time, the records relevant to this Subpoena Request.  WMATA also has no objection if the WMSC wishes to participate in those aspects of the FTA's drug and alcohol audit covering the Metrorail system, rather than duplicating effort and burdening WMATA resources.

**Request 15**.  All completed testing/decision forms of all post-accident and reasonable suspicion tests conducted from July 1, 2023, through December 31, 2023.

**Specific Objections:**  WMATA expressly incorporates by reference here its objections to Subpoena Requests 9, 13-14, as this Subpoena Request seeks the same type of quadruplicate forms but related to a different initiating event under 49 C.F.R. § 655.  WMATA notes that it has more than 100 such forms related this time period, causing a substantial burden to isolate, scan, and produce when they could be made available for the WMSC inspection or the WMSC could reasonably rely on, or accompany, the FTA's audit pertaining to the Metrorail system.
**Response:**  Without waiver of and subject to WMATA's objections, WMATA will make available for in-person inspection, at its office and at a mutually convenient time, the records relevant to this Subpoena Request.  WMATA also has no objection if the WMSC wishes to participate in those aspects of the FTA's drug and alcohol audit covering the Metrorail system, rather than duplicating effort and burdening WMATA resources.

**Request 16**.  All existing data reports/trend data related to drug and alcohol testing program for the period January 1, 2021 through December 31, 2023.

May 6, 2024
Page 14

  **Specific Objections:** WMATA objects to this Subpoena Request as vague and ambiguous; it is unclear what is meant by "all existing data reports/trend data." WMATA further objects that this Subpoena Request is overly broad and nonspecific, in that it appears to cover personnel beyond Metrorail, and to the extent this Subpoena Request seeks to require WMATA to create records that it does not maintain in the normal course.

  **Response:** Without waiver of and subject to WMATA's objections, WMATA is unaware of any documents that are responsive to this Subpoena Request because the only drug and alcohol testing program trend data WMATA maintains does not have data specific to Metrorail, and thus WMATA has no documents to produce.

**Request 18**.  The most recent drug and alcohol management information system (MIS) data report submitted to the U.S. Department of Transportation.

  **Specific Objections:** WMATA objects to this Subpoena Request as vague and ambiguous as to "the most recent" and as duplicative to information already in the WMSC's possession. WMATA further objects to this Subpoena Request as overly broad because the MIS report includes information across WMATA personnel beyond Metrorail. WMATA is required to submit this MIS report to the FTA annually on March 15, and the WMSC already has access to that report from the FTA. To the extent the WMSC is seeking the March 2023 Report, the WMSC should have it or can obtain it from the FTA. To the extent the WMSC is seeking the 2024 Report, its February 9, 2024 Initial Audit Request was premature, and the Subpoena Request was therefore unnecessary, because WMATA later transmitted the report to FTA on March 15, 2024.

  **Response:** Without waiver of and subject to WMATA's objections, WMATA will produce to the WMSC the 2023 and 2024 MIS reports previously submitted to the U.S. Department of Transportation.

**Request 21**.  All internal occupational health program audits, internal reviews, internal safety reviews, or similar assessments conducted from January 1, 2021 through December 31, 2023.

  **Specific Objections:** WMATA objects to this Subpoena Request as vague and ambiguous; it is unclear what is meant by "occupational health program" and "similar assessments." To the extent that "occupational health program" refers to the same OSHA programs listed in Subpoena Request 3 above, WMATA objects to the extent that this Subpoena Request is beyond the scope of the WMSC's limited, rail safety oversight authority and expressly incorporates herein its objections to Subpoena Requests 2 and 3. WMATA also objects to producing information already in the WMSC's possession. WMATA further objects to the extent that this Subpoena Request seeks to require WMATA to create records that it does not keep in the normal course of business.

  **Response:** Without waiver of and subject to WMATA's objections, on March 11, 2024, WMATA transmitted documents in response to the WMSC's Initial Audit Request 21—one related to WMATA's internal safety reviews and another regarding "Management Issue Notification." WMATA further states that it is unaware of a basis for the WMSC to request this

May 6, 2024
Page 15

information, but WMATA is willing to review and discuss any authority the WMSC wishes to supply, if any exists.

**Request 22**.  All existing data reports/trend data related to dosimetry testing, indoor air quality, toxic and hazardous substances, Job hazard analyses, PPE usage, training overdue for health and safety programs, employee safety concerns for the period January 1, 2021 through December 31, 2023.

      **Specific Objections:** WMATA objects to this Subpoena Request as vague and ambiguous; it is unclear what is meant by "data reports/trend data."  To the extent that "dosimetry testing, indoor air quality, toxic and hazardous substances, Job hazard analyses, PPE usage, training overdue for health and safety programs, employee safety concerns" refers to the same OSHA programs listed in Subpoena Request 3, WMATA objects to the extent that this Subpoena Request is duplicative and beyond the scope of the WMSC's limited, rail safety oversight authority, and expressly incorporates by reference here its objections to Subpoena Requests 2 and 3.  WMATA further objects that this Subpoena Request is overly broad and seeks information unrelated to Metrorail, and to the extent that this Subpoena Request seeks to require WMATA to create records that it does not maintain in the normal course of business.

      **Response:** Without waiver of and subject to WMATA's objections. WMATA is unaware of any documents that would be responsive to this Subpoena Request, and thus has no documents to produce.  Even if any documents existed, WMATA states that it is unaware of a basis for the WMSC to request this information, but for such requests, WMATA would be willing to review and discuss any authority the WMSC wishes to supply, if any exists.

**Request 23**.  List all fitness for duty and occupational health reporting requirements required by the federal government, the District of Columbia, Maryland, and Virginia.

      **Specific Objections:** WMATA objects to this Subpoena Request as vague and ambiguous; it is unclear what is meant by "all . . . reporting requirements" and "occupational health."  To the extent that "occupational health" refers to the same OSHA programs listed in Subpoena Request 3 above, per informal discussions between WMATA and the WMSC that the WMSC did not memorialize in the Subpoena, WMATA objects to the extent that this Subpoena Request is duplicative and beyond the scope of the WMSC's limited, rail safety oversight authority, and expressly incorporates by reference here its objections to Subpoena Requests 2 and 3.  WMATA further objects to the extent that this Subpoena Request seeks to require WMATA to create records that it does not maintain in the normal course of business. WMATA further objects that this Subpoena Request is overly broad and seeks information unrelated to Metrorail.  WMATA further objects to the Subpoena Request to the extent that the information requested is just as readily available to the WMSC as to WMATA.  WMATA is subject to various regulations containing reporting requirements, for which the WMSC has equal access, including publicly available laws and regulations.

      **Response:**  Without waiver of and subject to WMATA's objections, WMATA respectfully refers the WMSC to applicable federal and state fitness for duty and occupational safety and health

regulations, if any exist. WMATA further states that it is unaware of any documents that would be responsive to this Subpoena Request, and thus has no documents to produce.

**Request 24**. All occupational health inspection reports that relate to the WMATA Rail System from the federal Occupational Safety and Health Administration, the occupational health agencies from the District of Columbia, Maryland, and Virginia for the period January 1, 2022 through January 31, 2024.

    **Specific Objections:** WMATA objects to this Subpoena Request as vague and ambiguous; it is unclear what is meant by "occupational health inspection reports." To the extent that "occupational health inspection reports" refers to reports for the same OSHA programs listed in Request 3 above, WMATA objects to the extent that this Subpoena Request is duplicative and beyond the scope of the WMSC's limited, rail safety oversight authority, and expressly incorporates by reference here its objections to Subpoena Requests 2 and 3.

    **Response:** Without waiver of and subject to WMATA's objections, WMATA states that it is unaware of a basis for the WMSC to request this information, but WMATA is willing to review and discuss any authority the WMSC wishes to supply, if any exists.

**Request 25**. All medical monitoring results for welders and other employees who engage in hot work from January 1, 2021 through December 31, 2023.

    **Specific Objections:** WMATA objects to this Subpoena Request as vague and ambiguous; it is unclear what is meant by "medical monitoring results." To the extent that this Subpoena Request is seeking some results related to an OSHA program listed in Subpoena Request 3 above, WMATA is unaware of any such medical monitoring requirements. Even to the extent that the OSHA programs listed in Subpoena Request 3 above did include such medical monitoring requirements, WMATA objects to the extent that this Subpoena Request is beyond the scope of the WMSC's limited, rail safety oversight authority, and expressly incorporates by reference here its objections to Subpoena Requests 2 and 3.

    **Response:** Without waiver of and subject to WMATA's objections, WMATA is unaware of any documents that would be responsive to this Subpoena Request, and thus has no documents to produce. Even if any documents existed, WMATA states that it is unaware of a basis for the WMSC to request this information, but for such requests, WMATA would be willing to review and discuss any authority the WMSC wishes to supply, if any exists.

**Request 26**. All noise and dosimetry test schedules and results from January 1, 2021 through December 31, 2023.

    a. All documents confirming that audible or hearing tests are undertaken for personnel working in areas above WMATA's time-weighted average for noise levels.

    b. All medical monitoring results for employees exposed to an 8-hour time-weighted average (TWA) noise level of 85 decibels (dBs) or above or per the thresholds in WMATA's hearing conservation program.

May 6, 2024
Page 17

**Specific Objections:** WMATA objects to this Subpoena Request as vague and ambiguous; it is unclear what is meant by "medical monitoring results." WMATA objects to the extent that this Subpoena Request is duplicative and beyond the scope of the WMSC's limited, rail safety oversight authority, and expressly incorporates by reference here its objections to Subpoena Requests 2 and 3. WMATA also objects to the extent that this Subpoena Request is overly broad and relates to confidential, sensitive, and private records outside the scope of the WMSC's authority, not maintained electronically in the normal course of business, and intermingled with the records of non-Metrorail personnel.

**Response:** Without waiver of and subject to WMATA's objections, WMATA states that it is unaware of a basis for the WMSC to request this information, but WMATA is willing to review and discuss any authority the WMSC wishes to supply, if any exists.

**Request 27.** All exposure reports for air and surface monitoring regarding specific substances including without limitation, silica, asbestos, hexavalent chromium, lead, or any other toxic or hazardous substances from January 1, 2021 through December 31, 2023.

**Specific Objections:** WMATA objects to this Subpoena Request as overly broad and outside the scope of the WMSC's limited, rail safety oversight authority, and vague as to "all exposure reports for air and surface monitoring." WMATA is not subject to any surface monitoring requirements under the applicable OSHA regulations. WMATA further objects to the extent that this Subpoena Request is duplicative and beyond the scope of the WMSC's limited authority, and expressly incorporates by reference herein its objections to Subpoena Requests 2 and 3, with the addition that this Subpoena Request covers records subject to federal and state EPA oversight and not the WMSC's oversight for Metrorail safety. WMATA also objects to the extent that this Subpoena Request is overly broad and relates to confidential records outside the scope of the WMSC's authority, not maintained electronically in the normal course of business, and intermingled with the records of non-Metrorail personnel.

**Response:** Without waiver of and subject to WMATA's objections, WMATA states that it is unaware of a basis for the WMSC to request this information, but WMATA is willing to review and discuss any authority the WMSC wishes to supply, if any exists.

**Request 28.** All exposure reports from bloodborne pathogens and associated medical monitoring results from January 1, 2021 through December 31, 2023.

**Specific Objections:** WMATA objects to this Subpoena Request as vague and ambiguous; it is unclear what is meant by "exposure reports" and "medical monitoring results." To the extent that this Subpoena Request is seeking some results related to an OSHA program listed in Subpoena Request 3 above or otherwise, WMATA is unaware of any such medical monitoring requirements. Instead, OSHA's regulations call for immediate confidential medical evaluation and follow-up. Such efforts would be coordinated under WMATA's worker's compensation program, not WMATA's Office of Occupational Health and Wellness, and any production of any such records by WMATA to the WMSC would violate medical privacy laws because any such reports would include patients' medical status.

May 6, 2024
Page 18

WMATA further objects to the extent that this Subpoena Request is duplicative and beyond the scope of the WMSC's limited, rail safety oversight authority, and expressly incorporates by reference here its objections to Subpoena Requests 2 and 3. WMATA also objects to the extent that this Subpoena Request is overly broad and relates to confidential records outside the scope of the WMSC's authority, not maintained electronically in the normal course of business, and intermingled with the records of non-Metrorail personnel.

**Response:** Without waiver of and subject to WMATA's objections, WMATA is unaware of any documents that would be responsive to this Subpoena Request, and thus has no documents to produce in any event. Even if any documents existed, WMATA states that it is unaware of a basis for the WMSC to request this information, but for such requests, WMATA would be willing to review and discuss any authority the WMSC wishes to supply, if any exists.

\* \* \* \* \*

WMATA remains open to dialog with the WMSC regarding the issues raised above. In the meantime, if you have any questions, please do not hesitate to contact me.

Sincerely,

Patricia Y. Lee
Executive Vice President, Chief Legal Officer & General Counsel
Washington Metropolitan Area Transit Authority

cc:    Randy Clarke, General Manager and Chief Executive Officer
       Theresa Impastato, Executive Vice President, Chief Safety & Readiness Officer

in response to WMATA's General Objections and objections to Requests 2 and 3, above, which the WMSC incorporates herein by reference. Fundamentally, the WMSC Compact authorizes the WMSC to verify that WMATA is complying with applicable federal and state law, and its own safety procedures, and adequately protecting the health of Metrorail employees to assure the overall safety of Metrorail. The requested records clearly fall within that authority.

Specifically, WMATA is subject to detailed regulation regarding occupational noise exposure.[68] WMATA must "establish and maintain an audiometric testing program . . . [for] all employees whose exposures equal or exceed an 8-hour time-weighted average of 85 decibels."[69] WMATA must also "maintain an accurate record of all employee exposure measurements,"[70] including "[w]hen information indicates that any employee's exposure may equal or exceed an 8-hour time-weighted average of 85 decibels."[71] The WMSC is authorized to obtain and review those records, which should be readily available and producible.

**Request 27: All exposure reports for air and surface monitoring regarding specific substances including without limitation, silica, asbestos, hexavalent chromium, lead, or any other toxic or hazardous substances from January 1, 2021 through December 31, 2023.**

Request 27 seeks the results of WMATA's testing and monitoring for toxic and hazardous substances identified in 49 C.F.R. Part 1910 Subpart Z[72] to allow the WMSC to assess the efficacy and compliance with internal and external requirements of WMATA's occupational health program given the known presence of lead and asbestos on Metrorail property and equipment. This request is clearly within the WMSC's safety oversight authority and authority to implement and enforce applicable state and federal laws. WMATA's objections do not provide a basis to refuse to produce responsive information.

*Duplicative and Beyond the WMSC's Authority.* WMATA objects to Request 27 as duplicative and beyond the WMSC's authority and "covers records subject to federal and state EPA oversight and not the WMSC's oversight for Metrorail safety" for the same reasons WMATA objected to Requests 2 and 3. WMATA Response at 17. Those objections do not justify WMATA's refusal to produce responsive documents for the same reasons the WMSC discussed in response to WMATA's General Objections and objections to Requests 2 and 3, above, which the WMSC incorporates herein by reference. Fundamentally, the WMSC Compact authorizes the WMSC to verify that WMATA is complying with applicable federal and state law and adequately protecting the health of Metrorail personnel because their worksite should be safe. Protecting the health and safety of Metrorail personnel also contributes to the overall safety of Metrorail. The fact that other federal or state agencies may also oversee the same issues does not limit the WMSC's authority, as the WMSC Compact confirms.

Further, as discussed in response to Request 25, the fact that there are no specific federal or state monitoring requirements does not limit the WMSC's authority to request and examine any

---

[68] 49 C.F.R. § 1910.95.

[69] *Id.* § 1910.95(g).

[70] *Id.* § 1910.95(m).

[71] *Id.* § 1910.95(d).

[72] 29 C.F.R. §§ 1910.1053, 1910.1001, 1910.1026, and 1910.1025, respectively.

monitoring reports because the WMSC's authority is not limited by federal or state requirements. The WMSC has the authority to evaluate whether Metrorail employees are exposed to health hazards due to hazardous or toxic substances due to their work on Metrorail and whether additional safety measures are necessary to protect their health and promote the overall safety of Metrorail. Thus, Request 27 requests documents to allow the WMSC to assess whether WMATA has adequate medical monitoring programs for workers and whether WMATA has implemented the necessary safety measures of those programs to protect Metrorail workers.

Moreover, the fact that there are no federal or state surface monitoring requirements does not make this request vague. WMATA must produce the results of any testing or monitoring for exposure to these substances that it has in its possession. If WMATA is unsure if any specific type of testing or monitoring is responsive, the WMSC is available to discuss the matter.

**Request 28**: **All exposure reports from bloodborne pathogens and associated medical monitoring results from January 1, 2021, through December 31, 2023.**

WMATA is required to maintain employee records related to bloodborne pathogen exposure and monitoring and make those records available to OSHA for examination and copying.[73] Request 28 seeks documentation of WMATA's related testing and monitoring activities so that the WMSC can assess WMATA's compliance with these regulations. This request is clearly within the WMSC's safety oversight authority and authority to implement and enforce applicable state and federal laws. WMATA's objections do not provide a basis to refuse to produce responsive information.

*Duplicative and Beyond the WMSC's Authority*. WMATA objects to Request 27 as duplicative, beyond the WMSC's authority, and "covers records subject to federal and state EPA oversight and not the WMSC's oversight for Metrorail safety" for the same reasons WMATA objected to Requests 2 and 3. WMATA Response at 17. Those objections do not justify WMATA's refusal to produce responsive documents for the same reasons the WMSC discussed in response to WMATA's General Objections and objections to Requests 2, 3, 9, 25, 26, and 27, above, which the WMSC incorporates herein by reference. Fundamentally, the WMSC Compact authorizes the WMSC to verify that WMATA is complying with applicable federal and state law and adequately protecting the health of Metrorail employees to assure the overall safety of Metrorail. The documents requested are required by federal law and relate directly to the health and safety of Metrorail employees. Accordingly, the WMSC has the authority to request and review these documents.

Because WMATA professes to be "unaware of any such medical monitoring requirements," the WMSC clarifies by summarizing the requirements established by OSHA regulations. Specifically, WMATA is required to "establish a written Exposure Control Plan designed to eliminate or minimize exposure" to bloodborne pathogens.[74] In the event of employee exposure, WMATA "shall prepare an exposure determination" with specified elements,[75] "make immediately available to the exposed employee a confidential medical evaluation and follow-up"

---

[73] *Id.* § 1910.1030(h).

[74] *Id.* § 1910.1030 ("Bloodborne pathogens").

[75] *Id.* § 1910.1030(c)(2).

with a healthcare professional, and "obtain and provide the employee with a copy of the written opinion . . . ." Medical information about the employee unrelated to the exposure "shall not be included in the written report."[76] WMATA is thereafter required to "maintain an accurate record for each employee with occupational exposure," including a "copy of all results of examinations, medical testing, . . . follow-up procedures . . . and the healthcare professional's written opinion."[77] Finally, all of the required records must be made available to OSHA for examination and copying.[78] Part of the WMSC's work is assessing whether these plans and processes exist.

Because the WMSC Compact expressly authorizes the WMSC to "implement and enforce" all applicable federal and state laws, the WMSC is authorized to audit and enforce compliance with Section 1910.1030. As part of that responsibility, the WMSC will maintain the confidentiality of any PII or personal medical information. But the presence of such information does not prevent WMATA from producing the information to the WMSC.

---

[76] *Id.* § 1910.1030(f)(3)– (5).

[77] *Id.* § 1910.1030(h)(1)– (2).

[78] *Id.* § 1910.1030(h)(3).

32