# EXHIBIT A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

WASHINGTON METRORAIL SAFETY
COMMISSION,

        Petitioner,

v.

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY,

        Respondent.

Case No. 1:24-mc-00144

Judge Loren L. AliKhan

## DECLARATION OF THERESA M. IMPASTATO

I, Theresa M. Impastato, declare, pursuant to 28 U.S.C. § 1746, the following to be a true and correct statement of facts:

1. My name is Theresa M. Impastato, and I have been employed by the Washington Metropolitan Area Transit Authority ("WMATA") as Executive Vice President and Chief Safety and Readiness Officer since August 2019. I am over the age of eighteen, and I am competent to make this Declaration.

2. As the Chief Safety and Readiness Officer at WMATA, I oversee the authority's safety, training, quality, accessibility, and occupational health and wellness teams. I have a bachelor's degree in applied sciences from the University of Pennsylvania, undergraduate and advanced degrees in computer science and data and systems analysis from the University of Oxford, along with a Master of Public Health from the Geisel School of Medicine at Dartmouth. I also hold both the U.S. Department of Transportation (DOT) Transit Safety and Security Program (TSSP) and Public Transportation Safety Certification Training Program (PTSCTP) certificates (among other credentials). In addition, I serve as a rail system safety and accident investigation

instructor for the U.S. Department of Transportation's (USDOT) Transportation Safety Institute, as well as a member of multiple safety and operations committees for the American Public Transportation Association (APTA), the American Association of Railroads (AAR), the Transportation Research Board (TRB), and the American Railway Engineering and Maintenance-of-Way Association (AREMA).

3. Prior to joining WMATA, I served as Deputy Chief Safety Officer of Amtrak, where I led the drafting and implementation of the railroad's first Safety Management System and oversaw Federal Railroad Administration (FRA) safety certification programs for Amtrak's new high-speed trainsets, rolling stock procurements, and facilities projects. During my tenure at Amtrak, I was a member of the FRA Rail Safety Advisory Committee (RSAC) and participated in the development and implementation of multiple safety regulations including the establishment of minimum standards for training, qualification, and oversight of employees performing safety-related duties as well as standards for roadway worker protection programs.

4. In my role at WMATA, I serve as head of the WMATA Safety and Readiness Department, responsible for management and oversight of the Authority's safety programs across the entire WMATA transit system, including the Agency Safety Plan. I supervise approximately 1,000 staff members, which includes approximately 350 training academy apprentices, in the Department. My staff is highly credentialed with advanced qualifications and certifications such as Certified Industrial Hygienists (CIH), Certified Safety Professionals (CSP), Certified Professional Auditors (CPA), Professional Engineers (PE), Licensed Architects, Fire Inspectors, Doctors (MD), Masters of Public Health (MPH), Licensed Professional Nurses (LPN) and Registered Nurses (RN), Licensed Social Workers (LSW), PhDs in Curriculum and Instruction, Licensed Educators in Maryland, Virginia, and DC, and Licensed Tradesmen (e.g. electricians,

diesel mechanics, commercial drivers licenses examiners). These backgrounds are critical to understanding and implementing the complex requirements under which WMATA operates. Yet to my knowledge and experience the WMSC staff does not have such advanced qualifications or certifications, especially for areas outside the WMSC's limited authority (such as occupational health, industrial hygiene, and environmental hazards). I have raised that concern with the WMSC repeatedly because trying to explain highly technical requirements to inexperienced and unlicensed WMSC staff unnecessarily increases the burden in responding to the WMSC requests into areas beyond its knowledge and abilities. This has not occurred when responding to requests from federal oversight agencies and their sufficiently qualified professional staff.

5. I am the primary point of contact with WMATA's safety oversight agencies including the Federal Transit Administration ("FTA"), the National Transportation Safety Board ("NTSB"), the federal Occupational Health and Safety Agency ("OSHA"), the Environmental Protection Agency (EPA), and the Washington Metrorail Safety Commission ("WMSC").

6. Since the certification of the WMSC by the FTA in 2019, WMATA has responded to over 92 audit requests for documents from the WMSC across approximately 23 audits (not including the Fitness for Duty and Occupational Health Programs audit for which the subpoena at issue in this matter was issued). WMATA, at its own expense, has produced approximately 40,000 documents consisting of over 550,000 pages, plus another 118 Gigabytes of data uploaded electronically to the WMSC. During the COVID-19 pandemic, WMATA spent over 1,200 hours responding to just one of the numerous requests from the WMSC.

7. The amount of time I have been required to dedicate to communicating with and responding to the WMSC has grown rapidly over the past few years, especially with the ever-increasing scope of requests from the WMSC. While my Department is charged with, and

responsible for all safety, training, quality, accessibility, and occupational health and wellness issues across the second largest multi-modal transit system in the country, I estimate that I and my staff are now spending more than 70 percent of our daily time dealing with WMSC requests and orders. The requests are increasingly outside the WMSC's competence and authority under the WMSC Compact, and they distract from my responsibilities as Chief Safety and Readiness Officer. The burden on my Department is overwhelming.

8. As a compounding frustration, the WMSC frequently tries to circumvent me as the point of contact and issues requests directly to WMATA personnel including my staff, who have been increasingly burdened by WMSC's unreasonable demands and distracted from their primary safety roles. I have received reports from my staff that they have been the victims of harassment and threats by WMSC staff, particularly when my staff raises questions regarding a WMSC demand, urges the WMSC to go through proper channels, or attempts to prioritize the numerous responses.

9. Despite the WMSC's overreaching requests, WMATA has cooperated and tried to work with the WMSC in a good faith effort to respond to WMSC requests even where WMATA does not believe it has an obligation to provide information or to follow WMSC directives. WMATA has refused only where it believed that the WMSC's requests and demands were so ill-formed that they actively threatened safety of WMATA customers or employees. Yet the WMSC has now begun using WMATA's past cooperation to argue WMATA cannot refuse future demands, contributing to a needlessly adversarial relationship. On behalf on my Department, we cannot continue this trajectory, and I fear we will lose our talented staff. Even when we cooperate, the WMSC issues releases to the media which often present an exaggerated and misleading

version of events, discussions, and decisions,[1] seemingly to pressure WMATA into capitulating to its increasing demands instead of working with WMATA and WMATA's in-house expertise on these matters. I have been working in this industry for decades, and I am not aware of any situation like this across the country in any other transit system relationship with its oversight authorities. We do not experience the same aggressive tactics with WMATA's other oversight agencies (e.g., FTA, OSHA, EPA, NTSB).

10. At the increasing pace of the WMSC's requests, I estimate that just responding to the requests, providing instruction in order for WMSC staff to understand the complex and specialized data sets and sampling methods, and implementing corrective actions and other WMSC directives, will require WMATA to greatly expand its safety staff.

11. Moreover, many of the WMSC's demands create confusion and conflict, particularly when they intrude upon the authority of other agencies. Even the WMSC's own petition to enforce its subpoena uses two examples that illustrate this point: lead and asbestos exposure. In both of those issues, WMATA has followed the applicable OSHA regulations and EPA guidelines, agencies with the requisite knowledge of the actual lead and asbestos best

---

[1] There are many examples, but a few stand out. First, in its recent Roadway Worker Protection (RWP) audit report, the WMSC grossly mischaracterized multiple incidents as "near misses" or "life safety events." In reality, those situations are where, for example, a worker temporarily forgot to wear safety glasses—and was promptly corrected by their WMATA supervisor, far from a "near miss" or "life safety event." Similarly, the WMSC routinely mischaracterizes any voluntary WMATA safety action as one "compelled" by the WMSC, prompting the media to wrongly portray WMATA as only acting on a safety issue because of the WMSC. In January 2023, the WMSC announced it to the media it had forced WMATA to take train operators out of service during a holiday weekend for lack of training. As the WMSC later conceded, there was no lack of training because the WMSC had misunderstood that only the training hours allocation had changed with no reduction in aggregate training hours (from 30 hours of in-service training and 8 hours non-passenger rail yard training to, for example, a 32 and 6 hour allocation). The WMSC quietly rescinded its directive to take those operators out of service, without the same fanfare or correction issued to the media.

practices (of which the WMSC is apparently unaware), but kept the WMSC informed as a courtesy. The WMSC nevertheless issued orders and directives to WMATA dictating WMATA's operations that contradict and conflict with the other agencies, including by dictating to WMATA corrective action plans on how to run its operations (as opposed to oversight).

12.     For example, during an inspection in 2023, some materials with dust on them were found in some cabinets, and the WMSC issued a directive for WMATA to restock the cabinets. The WMSC was apparently unaware of industrial hygiene best practices, but WMATA took the safe approach and first tested the dust. When lead was found in the dust, which was not airborne until disturbed and posed only a minimal safety risk, WMATA retained a lead-abatement professional to clean the cabinets out of an abundance of caution for its employees' welfare. Had WMATA followed the WMSC's directive to simply restock the cabinets, the dust would not have been professionally removed, creating a potential safety incident. WMATA kept the WMSC apprised of these developments.

13.     In my role, I am also involved in formal correspondence with the WMSC, such as Petitions for Reconsideration to the WMSC CEO or Board under the WMSC Program Standard. WMATA has requested a stay of WMSC orders in the past when there have been disputes between the agencies, but the WMSC rarely grants a stay pending resolution. Instead, the WMSC has used WMATA's interim (indeed required) compliance with orders pending a stay to moot WMATA's complaints because the WMSC then claims it already received what it wanted. Also, the WMSC's inconsistent treatment of its communications as directives, orders, findings, or instructions often leaves WMATA to guess at the proper process to follow under the Program Standard, making it challenging for WMATA staff to respond and often results in unnecessary efforts. This is especially true where the WMSC emphasizes informal communications but then

later treats informal communications as formal or blames WMATA for escalating an unclear communication that the WMSC intended to remain informal.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 26, 2024 in Washington, D.C.

*Theresa M. Impastato*

Theresa M. Impastato
WMATA Executive Vice President and Chief Safety and Readiness Officer