# EXHIBIT B

**MEMORANDUM OF AGREEMENT**
between
**THE FEDERAL RAILROAD ADMINISTRATION**
**U.S. DEPARTMENT OF TRANSPORTATION**
and
**THE OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION**
**U.S. DEPARTMENT OF LABOR**

## I. PURPOSE

The purpose of this Memorandum of Agreement (MOA) is to facilitate coordination and cooperation concerning the employee protection provision of the Federal Railroad Safety Act, 49 U.S.C. 20109 and compliance with 49 CFR Part 225.

## II. BACKGROUND

The Federal Railroad Safety Authorization Act of 1980 included a railroad employee whistleblower provision, which prohibited a railroad employer from discriminating against or discharging an employee because such employee, whether acting in his own behalf or in a representative capacity, filed a complaint or instituted or caused to be instituted any proceeding under or related to enforcement of the federal railroad safety laws, or testified or was about to testify in any such proceeding. Railroads were also prohibited from discriminating against or discharging railroad employees for reasonably refusing to work in hazardous conditions. Complaints under this provision were resolved under the Railway Labor Act (45 U.S.C. 151 et seq.) by the National Railroad Adjustment Board or a board of adjustment under that statute. The Federal Railroad Safety Authorization Act of 1994 (FRSA) re-codified this whistleblower provision in 49 U.S.C. 20109. In 2007, Congress amended 49 U.S.C. 20109 by significantly expanding the whistleblower protection of railroad employees and transferring enforcement of the section to the Department of Labor (DOL). In 2008, Congress further amended 49 U.S.C. 20109 to add additional protection for employees who request first aid or medical treatment or follow their physician's treatment plan.

Under 49 U.S.C. 20109 an employee covered by FRSA is protected from retaliation for engaging in certain protected activities, including:

- Providing information to, causing information to be provided to, or otherwise assisting in an investigation by a federal, state or local regulatory or law enforcement agency, any member or committee of Congress, or the railroad about an alleged violation of any federal law, rule, or regulation related to railroad safety and security, or about gross fraud, waste or abuse of funds intended for railroad safety or security;

- Refusing to violate or assist in the violation of any Federal law, rule, or regulation related to railroad safety or security;

- Filing or testifying in a proceeding under one of these laws or regulations;

- Notifying or attempting to notify the railroad or the Secretary of Transportation of a work-related personal injury or illness;

- Reporting hazardous safety or security conditions, refusing to work under certain conditions, or refusing to authorize the use of any safety-or security-related equipment, track or structures under certain circumstances when the employee believes the equipment, track, or structures are in a hazardous safety or security condition; and

- Requesting medical or first-aid treatment or following orders or a treatment plan of a treating physician.

Under 49 U.S.C. 20109, the Secretary of Labor has the responsibility to investigate employee complaints of discrimination and may order all relief necessary to make the employee whole, including reinstatement of the complainant to his or her former position, back pay with interest, compensatory damages (including litigation costs and attorney fees), and punitive damages not to exceed $250,000. The Secretary of Labor has delegated that responsibility to the Assistant Secretary for Occupational Safety and Health. See Secretary's Order 01-2012 (Jan. 18, 2012), 77 FR 3912 (Jan. 25, 2012).

Additionally, the Secretary of Labor has the responsibility to investigate employee complaints of discrimination arising under section 11(c) of the Occupational Safety and Health Act, 29 U.S.C. 660(c). Section 11(c) generally provides protection for individuals in any industry who engage in protected activity related to safety or health in the workplace. The Secretary of Labor is authorized to conduct an investigation of such complaints to determine whether the provisions of 11(c) have been violated. The Secretary of Labor is authorized to bring an action in United States District Court, which may restrain any such violation and order all appropriate relief including reinstatement, back pay, and other appropriate relief.

The Federal Railroad Administration (FRA) works extensively with the railroad industry in enforcing federal railroad safety laws and regulations, including laws requiring reporting of railroad accidents resulting in death or injury to individuals. Potential railroad whistleblowers often contact the FRA before contacting the Occupational Safety and Health Administration (OSHA). FRA's accident reporting regulations (49 CFR Part 225) require railroad carriers to adopt and comply with an internal control plan that prohibits the harassment and intimidation of any person calculated to discourage or prevent that person from receiving proper medical treatment or to interfere with the reporting of an accident/incident to FRA. FRA enforces compliance with the accident/incident reporting regulations, including the provisions against harassment and intimidation through a variety of means, including regular inspections, audits, complaint investigations, and issuance of civil penalties.

OSHA and FRA have complementary responsibilities in the area of protecting the safety and health of railroad employees. In 1978, the FRA published a Policy Statement, 43 FR 10583, which outlined the respective areas of jurisdiction between the FRA and the OSHA in the railroad industry. In the Policy Statement, the FRA drew the jurisdictional line between "occupational safety and health" issues in the railroad industry and work related to railroad

operations, with the FRA exercising authority over railroad operations and OSHA exercising authority over occupational safety and health issues. The Policy Statement sought to ensure that the agency with the appropriate expertise to evaluate a particular condition would do so. Consequently, OSHA's regulations relating to substantive safety and health requirements apply to railroad employees, while safety and health issues specifically relating to railroad operations are regulated and enforced by the FRA. OSHA's authority under 49 U.S.C. 20109 and 29 U.S.C. 660(c) are unaffected; these whistleblower protection provisions apply without regard to whether the protected safety or health activity relates to substantive safety issues covered by OSHA or FRA.

Although the FRA and OSHA carry out their respective statutory responsibilities independently, under this MOA, the agencies agree that administrative efficiency and sound enforcement policies will be maximized by cooperation and the timely exchange of information in areas of mutual interest.

### III.  AREAS OF COOPERATION

This MOA sets forth the areas of cooperation and a process that FRA and OSHA agree to follow.

When an individual notifies FRA of alleged discrimination by a railroad carrier for engaging in conduct protected by 49 U.S.C. 20109, FRA will inform the individual that a personal remedy for discrimination is available through OSHA, rather than FRA, and that the individual should personally contact OSHA. FRA will provide the individual with the address and phone number of OSHA and advise the individual that the law requires that complaints be filed with OSHA within one hundred and eighty days (180) days of the alleged discrimination.

OSHA agrees to send FRA copies of the complaints it receives under 49 U.S.C. 20109, as well as any findings and preliminary orders that OSHA issues, including findings and orders dismissing complaints on the basis of a settlement or because of withdrawal of the complaint. FRA will review all copies of whistleblower complaints FRA receives from OSHA for potential violations of 49 CFR 225.33, which prohibits the harassment and intimidation of railroad employees in order to discourage or prevent a person from receiving proper medical treatment or from reporting an accident, incident, injury or illness, as well as potential violations of any other FRA safety regulation. FRA will also maintain a database of the complaints it receives from OSHA to monitor potential safety problem areas and issues in which FRA may be able to assist OSHA.

When, in the course of its investigation of a complaint under 49 U.S.C. 20109, OSHA learns of a potential violation of an FRA accident/incident reporting regulation under 49 CFR Part 225, or other violation of federal railroad safety regulations, OSHA may, to the extent authorized by law, share such information with FRA and provide documentation of the relevant facts.

FRA agrees to support OSHA whenever OSHA requests assistance in areas in which FRA can efficiently and effectively assist OSHA. Pursuant to the Privacy Act of 1974, 5 U.S.C.

552a, FRA and OSHA have established a procedure for coordinating and supporting enforcement of 49 U.S.C. 20109.

In accordance with the agreed upon procedure, when OSHA requests information from FRA's systems of records that are covered by the Privacy Act, OSHA will:

- Submit its request to FRA in writing to the designated FRA contact person for such requests;
- Specifically delineate any records or information it is requesting;
- Specifically state the law enforcement activity for which the records or information is sought; and
- Have the request signed by the Assistant Secretary for OSHA, or his/her designee.

FRA and OSHA agree to cooperate with each other to the fullest extent possible in every case of alleged discrimination involving an employee of a railroad. Each agency agrees to share all information it obtains relating to each complaint of discrimination and will adopt mutually agreeable procedures for the protection of information that either agency deems confidential.

Consistent with available resources, OSHA and FRA will develop and provide training to assist FRA enforcement staff in recognizing complaints of retaliation under 49 U.S.C. 20109 that must be referred to OSHA and to assist OSHA staff in recognizing potential violations of Federal railroad safety regulations revealed during investigations under 49 U.S.C. 20109.

Each agency shall designate and maintain points of contact within its national headquarters for purposes of implementation of this MOA and continued program oversight. A national headquarters point of contact will be established and identified by each agency within ten (10) days after the effective date of this agreement, and the contact information of this individual shall be provided to each agency. If the point of contact changes at any time, the agency will promptly notify the point of contact for the other agency, and provide the contact information for the new point of contact. Matters affecting program procedures and policy issues will be handled by the respective national headquarters office of each agency.

### IV.   REPORTING

The FRA will annually provide OSHA with a report of actions taken on complaints and referrals provided to FRA pursuant to this MOA. OSHA will annually provide FRA with a report regarding OSHA's processing of complaints under 49 U.S.C. 20109.

### V.   IMPLEMENTATION

The FRA official responsible for implementation of this Agreement is the FRA Administrator; the DOL official responsible for implementation of this Agreement is the Assistant Secretary for OSHA.

4

## VI. AMENDMENT AND TERMINATION

This Agreement may be amended or modified upon written agreement by both parties to the Agreement. The Agreement may be terminated upon ninety (90) days written notice by either party.

## VII. LEGAL EFFECT

Nothing in this MOA is intended to diminish or otherwise affect the authority of either agency to implement its respective statutory functions, including OSHA's authority under the Occupational Safety and Health Act, 29 U.S.C. 651 et seq., nor is it intended to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States, its agencies, its officers, or any other person. This MOA is effective upon signature by both parties.

This agreement does not itself authorize the expenditure or reimbursement of any funds. Nothing in this agreement obligates the parties to expend appropriations or enter into any contract or other obligations.

## VIII. RESOLUTION OF DISAGREEMENTS

Should disagreements arise about the interpretation of the provisions of this agreement or amendments and/or revisions thereto, that cannot be resolved at the operating level, the area(s) of disagreement shall be stated in writing by each party and presented to the other party for consideration. If agreement or interpretation is not reached within 30 days, the parties shall forward the written presentation of the disagreement to respective higher officials for appropriate resolution.

JOSEPH C. SZABO
Administrator
Federal Railroad Administration
U.S. Department of Transportation

Date: 7/9/12

DAVID MICHAELS, PHD, MPH
Assistant Secretary
Occupational Safety and Health Administration
U.S. Department of Labor

Date: JUL 0 5 2012

5