# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

WASHINGTON METRORAIL SAFETY
COMMISSION,

      Petitioner,

v.

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY,

      Respondent.

_____

Case No. 1:24-mc-00144-LLA-ZMF

Judge Loren L. AliKhan

Magistrate Judge Zia M. Faruqui

**ORAL HEARING REQUESTED**

## WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY'S
## REPLY IN SUPPORT OF OBJECTIONS TO THE MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDATIONS
## <u>REGARDING ADMINISTRATIVE SUBPOENA</u>

Attison L. Barnes, III (DC Bar No. 427754)
George E. Petel (DC Bar No. 1028877)
Joel S. Nolette (DC Bar No. 1781062)
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20006
Phone: (202) 719-7000
Fax: (202) 719-7049
abarnes@wiley.law
gpetel@wiley.law
jnolette@wiley.law

*Counsel for the Washington Metropolitan
Area Transit Authority*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

     I.     The WMSC's Arguments That the WMSC Compact Delegated Authority over OSH Issues Are Unavailing. ................................................................................ 4

          A.     The WMSC's Main Counterarguments Are Unavailing. ........................... 4

          B.     The WMSC's Mishmash of Other Arguments Is Equally Unavailing. ...... 8

     II.    As to Undue Burden, the WMSC's Arguments Are Also Unavailing. ................ 12

CONCLUSION ................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abramski v. United States*,
    573 U.S. 169 (2014)........................................................................................9, 12

*In re: All Assets Held in Acct. JW3083094 in the Name of Carinalli, S.A. at Jefferies, LLC*,
    No. 25-mc-TSC-MJS, 2025 WL 3650324 (D.D.C. Dec. 17, 2025) ........................................3

*Bell Atl. Tel. Cos. v. FCC*,
    131 F.3d 1044 (D.C. Cir. 1997) ........................................................................1

*Clark v. Martinez*,
    543 U.S. 371 (2005)........................................................................................5

*Del. Dep't of Nat. Res. & Env't Control v. EPA*,
    895 F.3d 90 (D.C. Cir. 2018) ........................................................................1

*Dolan v. U.S. Postal Serv.*,
    546 U.S. 481 (2006)........................................................................................1

*Dubin v. United States*,
    599 U.S. 110 (2023)....................................................................................1, 11

*EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*,
    719 F.2d 1426 (9th Cir. 1983) ........................................................................3

*FDIC v. Appl*,
    No. 24-mc-209-HLT-ADM, 2024 WL 5347465 (D. Kan. Oct. 9, 2024) .................................3

*Findley v. Jones Motor Freight, Div. Allegheny Corp.*,
    639 F.2d 953 (3d Cir. 1981)............................................................................1

*Fischer v. United States*,
    603 U.S. 480 (2024)......................................................................................11

*FTC v. Texaco, Inc.*,
    555 F.2d 862 (D.C. Cir. 1977) ........................................................................4

*Gustafson v. Alloyd Co.*,
    513 U.S. 561 (1995)......................................................................................11

*Holtzman v. Kunstmuseen Krefeld*,
    --- F. Supp. 3d ----, No. 20-cv-2976-LLA, 2025 WL 2800706 (D.D.C. Sept. 30, 2025) ....................................................................................10–11

*Jennings v. Rodriguez*,
　583 U.S. 281 (2018) ................................................................................................2

*KalshiEX LLC v. CFTC*,
　No. 23-cv-3257 (JMC), 2024 WL 4164694 (D.D.C. Sept. 12, 2024) ........................6

*Kisor v. Wilkie*,
　588 U.S. 558 (2019) ................................................................................................7

*In re Lucille Holdings Pte. Ltd.*,
　No. 1:21-mc-99 (GMH), 2022 WL 1421816 (D.D.C. May 5, 2022) ......................15

*Monsalvo v. Bondi*,
　604 U.S. 712 (2025) ............................................................................................7, 9

*Nat'l Fed'n of Indep. Bus. v. OSHA*,
　595 U.S. 109 (2022) ................................................................................................5

*Panama R.R. Co. v. Johnson*,
　264 U.S. 375 (1924) ................................................................................................9

*Pierce v. Underwood*,
　487 U.S. 552 (1988) ................................................................................................6

*Ratzlaf v. United States*,
　510 U.S. 135 (1994) ................................................................................................5

*In re Sealed Case*,
　932 F.3d 915 (D.C. Cir. 2019) ..............................................................................10

*SEC v. Brigadoon Scotch Distrib. Co.*,
　480 F.2d 1047 (2d Cir. 1973) ..................................................................................4

*Taylor v. District of Columbia*,
　325 F. Supp. 3d 144 (D.D.C. 2018) ......................................................................15

*Territorial Ct. of the Virgin Islands v. Richards*,
　847 F.2d 108 (3d Cir. 1988) ....................................................................................3

*Tunica-Biloxi Tribe of La. v. United States*,
　577 F. Supp. 2d 382 (D.D.C. 2008) ......................................................................10

*Turkiye Halk Bankasi A.S. v. United States*,
　598 U.S. 264 (2023) ................................................................................................1

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*,
　484 U.S. 365 (1988) ............................................................................................1, 9

*United States v. Adams*,
150 F. Supp. 3d 32 (D.D.C. 2015) ........................................................................15

*United States v. Griffin*,
119 F.4th 1001 (D.C. Cir. 2024) ............................................................................6

*United States v. Laursen*,
847 F.3d 1026 (9th Cir. 2017) ..............................................................................11

*United States v. Newport News Shipbuilding & Dry Dock Co.*,
837 F.2d 162 (4th Cir. 1988) ..................................................................................4

*United States v. Santos*,
553 U.S. 507 (2008) ................................................................................................5

*United States v. Whispering Oaks Residential Care Facility, LLC*,
673 F.3d 813 (8th Cir. 2012) ..................................................................................3

*Util. Air Regul. Grp. v. EPA*,
573 U.S. 302 (2014) .............................................................................................2, 6

*In re Woolsey*,
696 F.3d 1266 (10th Cir. 2012) ..............................................................................5

*Zuber v. Allen*,
396 U.S. 168 (1969) ..............................................................................................11

**Statutes**

28 U.S.C. § 636 ............................................................................................................3

49 U.S.C. § 3529 ..........................................................................................................7

Pub. L. No. 112-141, 126 Stat. 405 (2012) .........................................................4, 7–8

Pub. L. No. 115-54, 131 Stat. 1093 (2017) ..........................................................2, 10

**Other Authorities**

49 C.F.R. § 674.7 .........................................................................................................6

73A C.J.S. *Pub. Admin. L. & Proc.* § 306, Westlaw (Updated Dec. 2025)...................3

Antonin Scalia & Bryan A. Garner, *Reading Law* (2012) .......................................1, 5

*Element*, American Heritage Dictionary (5th ed. 2012) .............................................7

H.R. Rep. No. 115-227 (2017)...............................................................................9, 11

Rail Fixed Guideway Systems; State Safety Oversight, 70 Fed. Reg. 22562 (Apr. 29, 2005) ........................................................................................................................6

Respondent Washington Metropolitan Area Transit Authority ("WMATA"), by counsel, submits this Reply in Support of its Objections to Magistrate Judge Zia M. Faruqui's December 17, 2025 report and recommendations, styled an "Order," ECF No. 9 ("Order"), regarding the petition (the "Petition") of the Washington Metrorail Safety Commission (the "WMSC") for enforcement of an administrative subpoena *duces tecum* issued on April 8, 2024 (the "Subpoena").

## **INTRODUCTION**

While long on rhetoric and handwaving,[1] the WMSC's Response, ECF No. 15, glosses over dispositive points, makes mere conclusory statements without support, and otherwise loses "sight of the forest for the trees," Antonin Scalia & Bryan A. Garner, *Reading Law* 356 (2012) (cleaned up); *accord Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 275–77 (2023).[2]

As WMATA noted in its Objections, interpreting a legal instrument's terms, "plain or not, depends on context." *Bell Atl. Tel. Cos. v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997) (cleaned up); *accord Dubin v. United States*, 599 U.S. 110, 119 (2023) ("A statute's meaning does not always turn solely on the broadest imaginable definitions of its component words. Instead, linguistic and statutory context also matter." (cleaned up)); *Del. Dep't of Nat. Res. & Env't Control v. EPA*, 895 F.3d 90, 98 (D.C. Cir. 2018) ("But again, when it comes to determining a term's unambiguous meaning, context is key."). This is why the case reporters are littered with reminders that interpretation is a "holistic endeavor" requiring reading text in context, *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988); *Dolan v. U.S. Postal Serv.*,

---

[1]    *See Findley v. Jones Motor Freight, Div. Allegheny Corp.*, 639 F.2d 953, 960 (3d Cir. 1981) ("If you can't pound on the law or the facts, pound on the table." (cleaned up)).

[2]    Notably, for example, the WMSC does not respond to WMATA's concrete examples of the WMSC's prior OSH-related overreach exacerbating rather than ameliorating the underlying safety concerns, *see* ECF No. 11 at 14–15, except to note in conclusory fashion that it "disputes these allegations," ECF No. 15 at 4.

546 U.S. 481, 486 (2006); *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 320 (2014) ("*UARG*"), and admonitions to eschew "uncritical literalism," *Jennings v. Rodriguez*, 583 U.S. 281, 293–94 (2018) (plurality opinion) (cleaned up); *accord UARG*, 573 U.S. at 315–20. The WMSC asks the Court to construe the WMSC Compact, Pub. L. No. 115-54, 131 Stat. 1093 (2017), in just such a myopic manner.

WMATA welcomes the oversight of regulators to support WMATA's dedication to safety and reliability. Indeed, WMATA works hand-in-glove with a bevy of regulators, including multiple agencies focused on occupational safety and health ("OSH"), to ensure that its operations are safe. *See, e.g.*, ECF No. 11 at 10.[3] The WMSC is not an OSH-focused agency, and it is quite telling that the WMSC did not seek to wield OSH-related authority over WMATA until the lead-up to this Subpoena dispute. *See* ECF No. 11-1 at 5–6 ¶¶ 13–14 (pointing out that the WMSC's prior audit did not include the "numerous OSH-related topics" the WMSC demanded in the 2024 audit giving rise to the Subpoena); *cf. UARG*, 573 U.S. at 324 (a "measure of skepticism" is warranted when "an agency claims to discover" new, broad authority in an existing statute).

WMATA understandably opposes bureaucratic overreach from an agency that lacks the requisite expertise of other agencies already exercising regulatory authority over WMATA, which overreach threatens the very safety and reliability that that oversight is intended to support. *See generally* ECF No. 6-1 ("Impastato Declaration"). Here, that overreach is evident in Subpoena requests on OSH topics, *see, e.g.*, ECF No. 1 ¶¶ 34–35; *see also* ECF No. 11-1 ¶ 14 ("Supplemental

_____

[3]    Notably, neither the WMSC's Response nor any other communication contends that these OSH-expert regulators have performed their safety audit functions inadequately with respect to WMATA. ECF No. 11 at 27 n.10. Nor does the WMSC contend that there is a regulatory gap to fill here, but incredibly, the WMSC appears to claim that it takes "'precedence'" over OSHA and related agencies. ECF No. 15 at 13.

Impastato Declaration") (reciting each request), that are outside the WMSC's bailiwick, both legally and practically. And tellingly, the WMSC all but guarantees that, absent the Court's intervention now to prevent its overreach, the WMSC will double-down on this overreach even beyond its current bounds. *See, e.g.*, ECF No. 15 at 1 (referring to the disputed requests as an "initial step"); *id.* at 20 (calling "baseless[]" WMATA's contention that the WMSC "will assert itself into additional regulatory domains" but responding that WMATA can object "when" the WMSC "makes those requests").

For the reasons WMATA previously stated, ECF No. 11, and for the reasons that follow, the disputed Subpoena requests exceed the WMSC's authority and would unduly burden WMATA's efforts to operate Metrorail safely and effectively. Thus, the Court should decline to enforce the Subpoena.

## ARGUMENT

The WMSC agrees that this Court reviews the magistrate judge's Order *de novo*. ECF No. 15 at 5. On *de novo* review, *e.g.*, 28 U.S.C. § 636(b)(1), *In re: All Assets Held in Acct. JW3083094 in the Name of Carinalli, S.A. at Jefferies, LLC*, No. 25-mc-TSC-MJS, 2025 WL 3650324, at *1 (D.D.C. Dec. 17, 2025), this Court should reject the WMSC's overreach into OSH issues that are the subject of the disputed requests. Those requests exceed the WMSC's regulatory authority,[4]

---

[4]     The WMSC has the burden to prove the scope of its authority, not WMATA. *See, e.g.*, *FDIC v. Appl*, No. 24-mc-209-HLT-ADM, 2024 WL 5347465, at *2 (D. Kan. Oct. 9, 2024) ("the agency bears the initial burden of proof to show . . . the investigation is within the agency's authority"), *report and recommendation adopted*, 2024 WL 5347460 (D. Kan. Nov. 7, 2024); *see also* 73A C.J.S. *Pub. Admin. L. & Proc.* § 306, Westlaw (Updated Dec. 2025) ("Generally, with respect to the subpoena power of administrative agencies, the agency has the burden of demonstrating that it is acting within its authority."); *accord United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813, 817 (8th Cir. 2012); *Territorial Ct. of the Virgin Islands v. Richards*, 847 F.2d 108, 112 (3d Cir. 1988); *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc), *abrogated on other grounds as recognized*

see, e.g., *United States v. Newport News Shipbuilding & Dry Dock Co.*, 837 F.2d 162, 164 (4th Cir. 1988), and are "unreasonable" in that they "threaten[] to unduly disrupt or seriously hinder" WMATA's "normal operations," *see, e.g.*, *FTC v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C. Cir. 1977).

I.    **The WMSC's Arguments That the WMSC Compact Delegated Authority over OSH Issues Are Unavailing.**

The WMSC Compact gives the WMSC only rail-focused oversight authority, not an open-ended delegation of authority over occupational safety and health it would need to support its Subpoena requests. *See generally* ECF No. 11. In its desire to expand its authority, the WMSC marshals a hodgepodge of assertions. *See generally* ECF No. 15. None succeeds.

A.    **The WMSC's Main Counterarguments Are Unavailing.**

The WMSC's main points in opposition seek refuge in two provisions of the Moving Ahead for Progress in the 21st Century Act ("MAP-21") and a regulatory definition for "hazards." Each point is mistaken.

First, the WMSC points to the inclusion of "personnel" in a provision of MAP-21 directing transit authorities like WMATA to include in their "public transportation agency safety plans" ("PTASP") "strategies to minimize the exposure of the public, personnel, and property to hazards and unsafe conditions." Pub. L. No. 112-141, § 20021(a), 126 Stat. 405, 710 (2012) (now-codified at 49 U.S.C. § 5329(d)(1)(D)). From there, the WMSC improperly leaps to the conclusion that the "minimization of hazards and unsafe conditions faced by personnel is the very definition of occupational safety and health." ECF No. 15 at 1, 9–10, 14–15.[5] But the WMSC's cherry-picking

---

by *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299, 1303 (9th Cir. 1994); *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1055 (2d Cir. 1973).

[5]    Illustrating the carelessness of the WMSC's proposed interpretation generally, the WMSC

of words ignores that the "hazards and unsafe conditions" that WMATA must minimize applies equally and without differentiation to "the public" and "property" as well. And of course, neither the public nor property face "occupational" hazards and unsafe conditions. *See Nat'l Fed'n of Indep. Bus. v. OSHA*, 595 U.S. 109, 117 (2022) (per curiam) (recognizing that OSHA's authority over "occupational" safety and health encompasses "*workplace* safety" issues, not "broad public health" matters).

In other words, the WMSC's reading requires giving "hazards and unsafe conditions" a "different meaning for each category" of the list it modifies. *See Clark v. Martinez*, 543 U.S. 371, 378 (2005). Not only is doing so "frowned upon," it is "methodologically incoherent and categorically prohibited" because to do so "'would be to invent a statute rather than interpret one.'" *In re Woolsey*, 696 F.3d 1266, 1277 (10th Cir. 2012) (Gorsuch, J.) (quoting *Clark*, 543 U.S. at 378); *see also Clark*, 543 U.S. at 380, 386 (rejecting the "dangerous principle that judges can give the same statutory text different meanings in different cases" and explaining that, in these circumstances, the "lowest common denominator, as it were, must govern"); *United States v. Santos*, 553 U.S. 507, 522 (2008) (plurality opinion) (explaining that the Supreme Court has "forcefully rejected" the idea of "giving the same word, *in the same statutory provision*, different meanings *in different factual contexts*"); *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994) (explaining that "a *single* formulation" must be construed "the same way each time it is called into play" because "ascribing various meanings to a single iteration" of a phrase "would open

---

argues that the "breadth" of its authority "is clear in the way Congress used the disjunctive 'or' to include both 'hazards' *or* 'unsafe conditions.'" ECF No. 15 at 9. Except that § 3529(d)(1)(D) uses "and" in the clause the WMSC quotes on the same page. *Id.*; *cf.* Antonin Scalia & Bryan A. Garner, *Reading Law* 116 (2012) ("The conjunctions *and* and *or* are two of the elemental words in the English language.").

Pandora's jar" (cleaned up)); *accord KalshiEX LLC v. CFTC*, No. 23-cv-3257 (JMC), 2024 WL 4164694, at *11 (D.D.C. Sept. 12, 2024) (applying this principle to reject an agency's reading that "does not work for any other activity enumerated" in the relevant provision). Thus, the WMSC's reading "cannot be correct." *United States v. Griffin*, 119 F.4th 1001, 1014 (D.C. Cir. 2024).

Second, the WMSC invokes the regulatory definition of "hazard"—"any real or potential condition that can cause injury, illness, or death," 49 C.F.R. § 674.7—to argue that "hazard" as used in the WMSC Compact necessarily encompasses "occupational safety and health." ECF No. 15 at 2, 6, 14–15. Not so. The FTA first adopted this definition in 2005. *See* Rail Fixed Guideway Systems; State Safety Oversight, 70 Fed. Reg. 22562, 22578 (Apr. 29, 2005) (then-codified at 49 C.F.R. § 659.5). A companion regulation adopted simultaneously required rail transit systems to have a management process to identify and resolve "hazards," which noted that such hazards pertained to the "operation" of the rail-fixed-guideway system and included as examples "hazards" from "subsequent system extensions or modifications, operational changes, or other changes within the rail transit environment." Rail Fixed Guideway Systems, 70 Fed. Reg. at 22582 (then-codified at 49 C.F.R. § 659.31). The FTA carried forward to 49 C.F.R. § 674.7 this definition of "hazards" without material change. *See Pierce v. Underwood*, 487 U.S. 552, 567 (1988) ("reenacting precisely the same language would be a strange way to make a change").

In other words, "any real or potential condition that can cause injury, illness, or death" still speaks of conditions **on the fixed-rail system**, not general OSH issues not specific to the fixed-rail system. *See, e.g.*, Rail Fixed Guideway Systems, 70 Fed. Reg. at 22575 (explaining how this protocol required rail transit agencies to "develop a process to identify and resolve hazards ***during operation, system extensions, modifications, or changes***" (emphasis added)); *see also UARG*, 573 U.S. at 319–20 (recognizing that the "fundamental canon of statutory construction that the words

of a statute must be read in their context and with a view to their place in the overall statutory scheme" meant that the statutory phrase "any air pollutant" encompassed "not every conceivable airborne substance[] but only those that may sensibly be encompassed within the particular regulatory program" (cleaned up)); *cf. Kisor v. Wilkie*, 588 U.S. 558, 573 (2019) (directing courts to use "all the standard tools of interpretation" for regulations).

Third, the WMSC—while acknowledging that its authority is limited to Metrorail—tries to expand its authority merely because WMATA's PTASP includes methods for evaluating safety risks "throughout all elements of the public transportation system." Pub. L. No. 112-141, § 20021(a), 126 Stat. at 710 (now-codified at 49 U.S.C. § 3529(d)(1)(C)). Again, without statutory and other support, the WMSC tries to ***imply*** that general OSH issues are within its purview because it contends, for example, that "[e]mployee facilities" just like those found in "other types of workplaces" are also "an element of a public transportation system." ECF No. 15 at 9–10. Under MAP-21, that is wrong. An "element" is a "fundamental or essential part of a whole." *Element*, American Heritage Dictionary (5th ed. 2012). And as the WMSC itself has noted repeatedly, "[a]djectives modify nouns" by picking out "a subset of a category that possesses a certain quality." ECF No. 15 at 7 (quoting *Weyerhauser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 19 (2018)). Here, the noun "elements" is modified by the adjectival prepositional phrase "of the public transportation system." Thus, "all elements" are "all [fundamental or essential parts]" of WMATA's rail-fixed-guideway system—railcars, railway tunnels, railway tracks, and other rail-specific constituent parts. "Employee facilities" of the kind found "in other types of workplaces," ECF No. 15 at 9–10, simply do not fit the bill.

How Congress used the word "elements" elsewhere in MAP-21 confirms this point. "After all, identical words" in the same statute "should normally be given the same meaning." *Monsalvo*

*v. Bondi*, 604 U.S. 712, 726 (2025) (cleaned up). For instance, in another provision of that law, Congress exempted the federal Interstate System from the National Register of Historic Places but provided an alternative means for "individual elements" of the Interstate System with historic significance to be designated as historic sites. Pub. L. No. 112-141, § 1104(a), 126 Stat. at 426 (codified at 23 U.S.C. § 103(c)(5)(A)–(B)). And Congress identified examples of such "elements"—a "historic bridge or a highly significant engineering feature." *Id.* Similarly, in a provision of MAP-21 pertaining to state-highway safety improvements, Congress conditioned the granting of certain funds on states' identifying "elements" of highways that "constitute a danger to motorists," including as examples of such elements "roadside obstacles, railway-highway crossing needs, and unmarked or poorly marked roads." Pub. L. No. 112-141, § 1112(a), 126 Stat. at 454 (codified at 23 U.S.C. § 148(c)(2)(B)(i)); *see also id.* § 1304(b), 126 Stat. at 533 (codified at 23 U.S.C. § 120(c)(3)(B)(i)) (referring to "prefabricated bridge elements" used in "bridge construction"). As these examples demonstrate, "elements" as used in MAP-21 speaks of the components of a transportation system inherent thereto, not generic matters (like general OSH issues) "found in other types of workplaces, too." ECF No. 15 at 10.

## B.    The WMSC's Mishmash of Other Arguments Is Equally Unavailing.

Beyond these central counterarguments, the WMSC raises a smattering of other retorts. But these either do not move the needle or else affirmatively undermine its interpretation of the WMSC Compact and related statutory and regulatory provisions.

For instance, the WMSC argues that WMATA overreads "exclusive" in the WMSC Compact to mean that it would displace all other agencies' supervisory authority over WMATA (and thus that the WMSC's authority must not encompass OSH issues because it is undisputed that WMATA is regulated by, for instance, OSHA and its state-level counterparts). ECF No. 15 at 12.

To the WMSC a "more natural reading[,]" based on the background statutory and regulatory "context" to the WMSC Compact, is that the WMSC has "exclusive" authority only *vis-à-vis* other potential state safety oversight authorities in Virginia, Maryland, or the District of Columbia that could be created to regulate Metrorail. *Id.* So much for the "plain text" of the WMSC Compact being the "end of the analysis." *Contra id.* at 7–8. In any event, the WMSC is wrong. *See* ECF No. 11 at 23–25. Regardless, regulatory practice in this area has been to "avoid duplication" of OSH authority between agencies. *See* ECF No. 6 at 11–12, 12 n.6. Particularly against this "backdrop," *Monsalvo*, 604 U.S. at 725, it is "not lightly to be assumed" that the WMSC Compact created such duplicative oversight authority between the WMSC and the OSH agencies overseeing WMATA, *see Panama R.R. Co. v. Johnson*, 264 U.S. 375, 384 (1924). *See also* ECF No. 6 at 20; *accord* H.R. Rep. No. 115-227, at 12 (2017), *as reprinted in* 2017 U.S.C.C.A.N. 90, 94, 2017 WL 3113984 (reporting that the WMSC Compact was not "known to be duplicative" of existing programs, agencies, offices, and initiatives).

The WMSC asks the Court to ignore the illogical consequences of holding that the WMSC wields OSH authority given what that holding would mean for other provisions of the WMSC Compact, such as the WMSC's enforcement authority under the WMSC Compact. ECF No. 15 at 12–13 ("WMATA's . . . 'common sense' concerns . . . are immaterial and wrong. . . . The only issue before the Court is the WMSC's authority to enforce the Subpoena."); *see also id.* at 3 (asking the Court to ignore WMATA's "jeremiad" because "the issue here is only whether the WMSC has the authority to obtain the information requested in the Subpoena"). But ignoring the "holistic" implications that the Court's holding would have for other provisions of the WMSC Compact is simply not how judicial interpretation is done. *See United Sav. Ass'n of Tex.*, 484 U.S. at 371; *see also Abramski v. United States*, 573 U.S. 169, 179 n.6 (2014) ("[A] court should not interpret each

word in a statute with blinders on, refusing to look at the word's function within the broader statutory context."). And as WMATA explained, considering those points reinforces the conclusion that the WMSC lacks OSH authority. *See* ECF No. 11 at 24, 26–27. If the WMSC has OSH authority to obtain the materials demanded by the Subpoena, then it has OSH authority to issue OSH-related mandates and OSH-related regulations—a point the WMSC tries to run from, *see* ECF No. 15 at 16 n.5 ("[T]he WMSC is not imposing any regulations or mandates, but simply requesting documents."), given that it would "render incoherent the overall statutory scheme" of which the WMSC Compact is a part. *See Tunica-Biloxi Tribe of La. v. United States*, 577 F. Supp. 2d 382, 424 (D.D.C. 2008).

The WMSC argues that it has overlapping OSH authority with other regulators by virtue of § 30(d) of the WMSC Compact. *See* ECF No. 15 at 13. Notably, the WMSC does not quote the language of that provision, which gives the WMSC authority to implement and enforce only "relevant" laws and regulations "relating to safety of the WMATA Rail System." WMSC Compact § 30(d). The "WMATA Rail System" is WMATA's "rail fixed guideway public transportation system" and other "rail services" property (like "rail projects under design or construction"). *Id.* § 1(m). General OSH issues are not encompassed by this authority. *See* ECF No. 11 at 21–23.

The WMSC then asks the Court to disregard the legislative history supporting WMATA's position. ECF No. 15 at 14 n.14. Yet both this Court and this Circuit look to legislative history as a valid "tool[] of statutory interpretation." *In re Sealed Case*, 932 F.3d 915, 928 (D.C. Cir. 2019); *accord Holtzman v. Kunstmuseen Krefeld*, --- F. Supp. 3d ----, No. 20-cv-2976-LLA, 2025 WL 2800706, at *7 (D.D.C. Sept. 30, 2025). Further, the WMSC only addresses the floor statements WMATA previously identified, *see* ECF No. 11 at 25–26, while ignoring the House Committee Report expressing the understanding that the WMSC Compact was not "duplicative" of existing

programs. H.R. Rep. No. 115-227, *supra*, at 12; *see also Holtzman*, 2025 WL 2800706, at *7 (referencing a House Committee Report elucidating what the "House of Representatives contemplated" as to the meaning of a statutory phrase); *cf. Zuber v. Allen*, 396 U.S. 168, 186 (1969) ("A committee report represents the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation.").

Oddly, the WMSC suggests that reading "hazards" in the WMSC Compact in accordance with the dictates of the consistent-usage canon (the same word generally has the same meaning in the same statute) and the *noscitur a sociis* canon (one word should be understood in light of the words with which it is associated in a statute) is an unprecedented "interpretive trick." ECF No. 15 at 15. But it is not, as established by Supreme Court precedent. *See, e.g., Dubin*, 599 U.S. at 125–26 (applying *noscitur a sociis* and "[a]nother canon of construction" to adopt a "narrow interpretation" of statutory language); *accord Gustafson v. Alloyd Co.*, 513 U.S. 561, 570–75 (1995) (applying the consistent-usage canon and *noscitur* to interpret the Securities Act of 1933). The WMSC further argues incorrectly that *noscitur* is inappropriate to rely on here, when, in fact, it "confirms" what reading the text in its context otherwise dictates, *see United States v. Laursen*, 847 F.3d 1026, 1032 (9th Cir. 2017); *accord Fischer v. United States*, 603 U.S. 480, 487 (2024) (noting that the *noscitur* canon "track[s] the common sense intuition" of what a statute means)— that "hazards" speaks of rail-specific dangers (say, a faulty component of a railcar containing material that could leak and cause illness), not ordinary occupational risks equally present in other workplaces that are the subject of the disputed Subpoena requests.

Finally, the WMSC somehow both ignores, and then misses, the point that its authority to audit WMATA's PTASP cannot be read to give the WMSC OSH authority by virtue of WMATA's inclusion of OSH issues in that safety plan. *Compare* ECF No. 15 at 6 (arguing that the WMSC

has OSH authority because "WMATA's PTASP includes occupational safety"), *with* ECF No. 15 at 16–17 (arguing that WMATA's position is beside the point because the "Subpoena does not apply to non-rail modes" of transportation). As WMATA has explained, this rationale "proves too much" in that it would improperly "allow" the WMSC to exercise authority over WMATA's other modes of transit included in WMATA's PTASP—modes that the WMSC undisputedly does not have authority to regulate. ECF No. 11 at 30–31 (quoting *Fed. Open Mkt. Comm. of Fed. Rsrv. Sys. v. Merrill*, 443 U.S. 340, 353–54 (1979)). Ignoring the necessary implications of the WMSC's position in this case is simply not how judicial interpretation works. *E.g.*, *Abramski*, 573 U.S. at 179 n.6 ("[A] court should not interpret each word in a statute with blinders on, refusing to look at the word's function within the broader statutory context."). If the WMSC's audit authority of WMATA's PTASP means that the WMSC has regulatory authority over everything in the PTASP, as the magistrate judge reasoned, then the WMSC would have authority over WMATA's other modes of transit—something the WMSC undisputedly does not have. Thus, as the WMSC seems to concede, this rationale cannot support the Subpoena.

## II.    As to Undue Burden, the WMSC's Arguments Are Also Unavailing.

The WMSC attempts to sidestep in several ways the fact that the disputed Subpoena requests are unduly burdensome. *See generally* Impastato Declaration; Supplemental Impastato Declaration. Each attempt falters.

First, ***without introducing any affirmative evidence of its own***, the WMSC attempts to cast unsupported aspersions on Ms. Impastato's declaration, based on her personal knowledge and experience, that responding to the disputed Subpoena requests will conservatively take about 3,000 working hours. ECF No. 15 at 18–19; *see* Supplemental Impastato Declaration, ECF No. 11-1 at 3–4 ¶¶ 7–9. The WMSC incorrectly contends that this estimate cannot be right because it is "grossly disproportional to the 1200-hour figure cited" in the original Impastato Declaration. ECF

No. 15 at 18–19. However, that "1200-hour figure" referred to "just *one* of the numerous" requests for documents from the WMSC. Impastato Declaration, ECF No. 6-1 at 4 ¶ 6 (emphasis added). There are *eleven* disputed Subpoena requests here. *See* Supplemental Impastato Declaration, ECF No. 11-1 at 5–6 ¶ 14. Based on this empirical illustration, Ms. Impastato's 3,000-hour estimate is conservative indeed, not "grossly disproportional." Also without any factual evidence in a declaration or otherwise, the WMSC suggests that these figures are "speculation." ECF No. 15 at 18. But again, concrete examples of the time-consuming nature of responding to the WMSC's requests are in the record. Impastato Declaration, ECF No. 6-1 at 4 ¶ 6. And not only that, but Ms. Impastato explained how the WMSC's requests "typically involve[] multiple sequential phases that extend well beyond document retrieval" and require "hundreds if not thousands of staff hours" above and beyond the document-collection-and-production process. Supplemental Impastato Declaration, ECF No. 11-1 at 3 ¶ 8.[6]

Second, the WMSC contends that the requests in the Subpoena are "noncomplex" and thus not unduly burdensome because they ask for data that WMATA produces to other agencies. ECF No. 15 at 18. But to suggest that the WMSC is merely requesting data that WMATA produces to other agencies would be misleading at best. Even the WMSC cannot deny that, contrary to its representation in footnote five that it is merely requesting documents, it also issues directives to WMATA, such as those to recklessly remove lead dust and asbestos tiles without proper safety precautions. *See* ECF No. 11 at 14–15. The WMSC, which had no answer in its Response to these WMSC blunders, would prefer to sweep those reckless directives under the rug to claim it is only

---

[6]     With the WMSC calling Ms. Impastato's credibility into question, WMATA would be happy to produce her as a live witness at an evidentiary hearing if the Court would find that beneficial. This, of course, should not be necessary, however, because the WMSC did not provide any factual support for its arguments, and the Impastato Declarations are undisputed.

requesting data WMATA produced to other agencies. Regardless, the WMSC's argument collapses because merely requesting data that WMATA produces to other agencies would not be "exclusive" to the WMSC as the Compact requires.

Also, the WMSC ignores the very reason why the duplicative nature of these requests makes them unduly burdensome. As Ms. Impastato explained, at a baseline, when the WMSC demands these records, because its authority is limited to Metrorail, "WMATA must scour its voluminous records across its entire system for all modes of service," then "separate out, to the extent it can, those records that pertain only to Metrorail in order to compile records appropriate to produce to the WMSC." Supplemental Impastato Declaration, ECF No. 11-1 at 4 ¶ 9. Further, the WMSC's OSH-related requests require "sustained involvement from additional WMATA personnel" because the WMSC requests require extensive review and "cross-departmental coordination to produce" far exceeding that required of other agencies' requests. *See id.* at 6–7 ¶¶ 13, 15. The burden here is especially compounded with respect to requests for materials about "toxic and hazardous substances," about medical "testing" and "monitoring," or about "air and surface monitoring"—requests that implicate employee privacy (and thus require additional review and coordination to produce) and that require the involvement of WMATA's subject-matter experts on these topics (such as industrial hygienists) to explain the data to the WMSC and address its often-extensive follow-up questions. *Id.* at 5–7 ¶¶ 8, 14–15.

Third, the WMSC suggests that there is no undue burden here because the WMSC has "agreed to narrow the scope of certain requests covered by the Subpoena to reduce the burden on WMATA." ECF No. 15 at 4. But as the WMSC itself later admits, this narrowing pertained to "other, undisputed document requests," not the OSH-related requests at issue. *Id.* at 20 n.7.

14

Finally and unconvincingly, the WMSC asks the Court to deem WMATA's undue-burden contentions "waived," *i.e.*, forfeited. ECF No. 6 at 6, 17; *see also United States v. Adams*, 150 F. Supp. 3d 32, 36 (D.D.C. 2015) (discussing the difference between waiver and forfeiture). But the WMSC has litigated the issue and has had the "opportunity to rebut" WMATA's undue-burden arguments, on which grounds WMATA has objected to the disputed Subpoena requests from the beginning. *See, e.g.*, ECF No. 1-9 at 2, 9, 12, 16–19; ECF No. 6 at 6, 10–11, 15; *see also Taylor v. District of Columbia*, 325 F. Supp. 3d 144, 145 (D.D.C. 2018); *In re Lucille Holdings Pte. Ltd.*, No. 1:21-mc-99 (GMH), 2022 WL 1421816, at *12 (D.D.C. May 5, 2022). The magistrate judge analyzed this issue, the WMSC has litigated it, and so the Court should resolve it.

## CONCLUSION

For the foregoing reasons and those set forth in WMATA's prior submissions, WMATA respectfully urges the Court (1) to hold that the WMSC does not have authority over general OSH issues and that the disputed Subpoena requests are thus not within the WMSC's authority to issue; and (2) alternatively, to hold that the disputed Subpoena requests are unduly burdensome. The Court should deny the WMSC's Petition and should grant such further relief as the Court deems proper.

Dated: January 21, 2026                Respectfully submitted,

                                       /s/ Attison L. Barnes, III
                                       Attison L. Barnes, III (DC Bar No. 427754)
                                       George E. Petel (DC Bar No. 1028877)
                                       Joel S. Nolette (DC Bar No. 1781062)
                                       **WILEY REIN LLP**
                                       2050 M Street NW
                                       Washington, DC 20006
                                       Phone: (202) 719-7000

Fax: (202) 719-7049
abarnes@wiley.law
gpetel@wiley.law
jnolette@wiley.law

*Counsel for the Washington Metropolitan Area Transit Authority*